(161 App. Div. 250)

GANS v. ÆTNA LIFE INS. CO. OF HARTFORD, CONN.

(Supreme Court, Appellate Division, First Department. March 6, 1914.)

INSURANCE (§ 144*)—POLICY—CONSTRUCTION.

Where an insured exercised his privilege of exchange contained in a five-year renewable term policy and exchanged it for an ordinary life policy bearing the date of the exchange, the second policy was not a mere continuation of the first, but created a new contract from its date; since term insurance and the ordinary life policy are essentially different, being based upon different considerations.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 273–275; Dec. Dig. § 144.*]

Appeal from Trial Term, New York County.

Action by Milton H. Gans, executor, against the Ætna Life Insurance Company of Hartford, Conn. From a judgment for plaintiff, and

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

from an order granting an extra allowance, defendant appeals. Judgment and order reversed, and complaint dismissed.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and HOTCHKISS, JJ.

Keyes Winter, of New York City, for appellant.
Herbert H. Maass, of New York City, for respondent.

HOTCHKISS, J.   On April 5, 1907, defendant issued its two "five-year renewable term" policies on the life of the deceased. Each of these policies provided that at its expiration it might "be *renewed and continued* for successive terms of five years each without medical re-examination," on payment of the premiums expressed to be paid during such respective renewal terms; also that each policy should be incontestable after one year from its date, and each contained a "sane or insane" suicide clause, limited to a similar period of one year. Each of the several policies also provided that at certain fixed dates, on payment of appropriate premiums, and without medical re-examination, it might be "exchanged" for a policy of a different kind. The "exchange" permitted was substantially as follows, for: (1) A policy in a form in use by the company at the time the term policy was originally issued, in which case the policy so to be issued should be dated as of the date of the original term policy, and the assured should reimburse the company for any difference between the amount of premiums already paid on the term policy and the amount which would have accrued had the new policy been issued as of the date of the term policy; (2) a policy in a form in use by the company at the time of the "exchange," in which case such policy should be dated as of the date of the "exchange."

Shortly before the expiration of the first term of five years of the term policies, the deceased exercised his privilege to "exchange" the same for other policies, and thereupon signed and delivered to defendant an "application for changed insurance on my life," which among other things, contained an agreement on his part—

"that the statements and answers in the application for said term policy shall be the basis of the new contract or policy herein applied for and form a part of the same, except that the kind of policy, amount of the same and the premium thereon shall be as specified below."

In pursuance of this application, defendant accepted a surrender of the term policies, and issued to the deceased the policies which are the subject of this action.

Each of these policies bears date as of the day of the "exchange," and provides for the payment annually of a level premium for a period of 36 years, and is payable on the death of the assured, or at the expiration of said 36 years if he is then living. The policy also carried "health or disability" insurance, by the terms of which it was, among other things, provided that in further consideration of a small additional annual premium the defendant, under certain contingencies and on proof that the assured had become permanently disabled and incapacitated to perform any work, or had suffered the loss of certain members, and on surrender of the policy, would issue to the assured a

contract to pay him certain sums of money, which obligation, however, was conditioned upon the fact that the disability or injuries of the deceased should arise "from causes originating after the delivery of this agreement." These latter policies recite that they are "made in consideration of the application for this policy, which application is hereby made a part of this contract and in further consideration of the semiannual premium"; also "that this policy and the application herefor constitute the entire contract between the parties hereto and shall be incontestable after one year from its date." Each contains a clause voiding the policy in case of suicide within "one year from the date hereof * * * sane or insane." Within the year the deceased died by his own hand.

The trial court held that the policies in suit did not create a new contract, but were mere continuations of the original term policies. I think this was error. The original or "term" policies did not afford the assured insurance for the term of his natural life, but were expressly limited to "the term of five years from the date hereof and no longer except as hereinafter provided." The scheme of such insurance is familiar. In the ordinary life policy the assured pays a level premium during the whole period, over which premium payments are extended. Under such policies the amount of premium paid during the earlier years is in excess of the sum actually needed for carrying the risk, which risk naturally increases year by year, with the result that the excess of premium paid during the earlier years provides a fund from which the deficiency incident to the later years is made up, which deficiency is termed "reserve." Term insurance is essentially different, being insurance for the specified term only; the premium being calculated on a basis which provides for such deaths only as occur during the term. The premium paid is "level" during the specified term only, and increases with each renewal term. The premium in the case of term insurance is consequently lower than in the case of straight life insurance, the premium in the former case carrying no reserve, being based upon a sort of "pay as you go" theory. See Willard's The A B C of Life Insurance, p. 53.

Policies of this description were before the courts in McDougall v. P. S. L. A. Society, 135 N. Y. 551, 32 N. E. 251, and Rosenplaenter v. Provident Society, 96 Fed. 721, 37 C. C. A. 566, 46 L. R. A. 473, which involved "one year renewable term" policies. The privilege of exchange given in the term policies in question afforded him, at his option, the right to take out a policy which would have borne a date identical with that of the term policy surrendered, but in that case it was expressly provided that the assured should pay—

"the difference between the premiums already paid hereon for an amount equalling that of the new insurance and those that would have been required under the new policy, with 6 per cent. interest."

But he did not elect to take this kind of policy, or to pay its cost. On the contrary, he elected to take the policies in suit, which it was expressly agreed "shall bear the same date as this policy," that is, the surrendered term policy. The distinction between the new policies and the old is further indicated by that portion of the latter in which the

right is given to the assured to extend and keep alive the "term" in-surance at the expiration of each term. The term policies say, "This policy upon its expiration may be renewed and continued for succes-sive terms of five years each," but under the terms of the privilege for exchange, as accepted by the deceased, the assured completely abandons his term insurance, and elects to take a new contract of an entirely dif-ferent character and based upon a new scheme and rate of premium; the new contract, according to the express terms of the "privilege," being purchased and paid for on the basis of the day of its date. The old contracts were not continued, nor were new policies issued based on any payment that had been previously made. On the contrary, the as-sured had already had full consideration for all the payments he had made under the term policies, and received new policies upon new and independent considerations, which considerations were themselves based upon the necessary cost to defendant of carrying the assured un-der the new kind of risk he had elected to take. That the policies in suit were intended to be new contracts operating from their date is fur-ther evidenced by that portion covering "health or disability insur-ance," which provided that the disabilities of the assured should arise "from causes originating after the delivery of this agreement." Could it be said that recovery could be had for a disability which clearly had its origin during any part of the previous five years when the term policies were in effect?

The situation here is entirely different from that appearing in Dann-hauser v. Wallenstein, 169 N. Y. 199, 62 N. E. 160, McDonnall v. Ala-bama G. L. Ins. Co., 85 Ala. 412, and Cowles v. Continental Life Ins. Co., 63 N. H. 300, where paid-up policies were issued without any new consideration, and in which cases the beneficiaries received no more than they were entitled to receive because of the considerations there-tofore paid by the assured, and where the new liability assumed by the insurers was determined solely on the basis of such past considerations. The principle of Barry v. Brune, 71 N. Y. 261, page 264, is the same as that of Dannhauser v. Wallenstein, because in that case the new policies were issued in consideration of nothing more than "the pre-miums which had accrued and become payable on the original policies," which had elapsed; the new policies bearing the same numbers as the old policies, for which they were a substitute.

To effectuate this decision the eighteenth finding of fact, and the first, third, fourth, and sixth conclusions of law will be reversed. The word "not" will be struck out of the second and fifth conclusions of law, and as thus amended the findings of the trial court will be adopted as the findings of this court; the judgment and order will be reversed, with costs to appellant, and the complaint dismissed, with costs. All concur.