EMMA J. JOHNSON, Appellant, v. AMERICAN CENTRAL LIFE INSURANCE COMPANY, respondent.

In the Kansas City Court of Appeals, July 10, 1922.

1. **INSURANCE: The Time When Policy of Life Insurance was to go into Effect Fixed the Date When the Insurance Ended.** The time of taking effect of a life insurance policy controls as to its termination, and gives to insured, upon payment of annual premium, a full year's insurance from time when contract of insurance was to go into effect.

2. **A RECEIPT BY INSURER'S AGENT TO APPLICANT FOR LIFE INSURANCE, HELD NOT TO BE IN AND OF ITSELF A PART OF INSURANCE CONTRACT UNTIL INSURED WAS NOTIFIED THAT APPLICATION WAS ACCEPTED AND APPROVED.** Where an agent of a life insurance company delivered to an applicant for insurance, a receipt containing an agreement between the parties, that under certain contingencies, a contract of insurance would be made, the receipt never became a completed contract in and of itself where the only insurance contemplated in it was the insurance created by the application and policy and there was no notice to insured that the application was approved until the policy was delivered.

(290)

3. ————: Construction: Where Contract of Insurance is Ambiguous, that Construction Which is Most Favorable to Insured Will be Adopted. Where a contract of insurance is ambiguous as to time it was to go into effect, that construction which is most favorable to insured will be adopted.

4. ————: A Contract of Insurance Solicited, Applied for and Made Complete by Delivery to Assured in Missouri, Held a Missouri Contract and Governed by the Laws Thereof. Where a contract of insurance was solicited, applied for and made complete by delivery to insured in Missouri, held a Missouri contract, and governed by the laws and rules of decision thereof.

5. CONSTITUTIONAL LAW: Due Process: Where Jurisdiction of Person and Subject-matter not Questioned, Action of Court, However Erroneous, Held Due Process of Law Within Meaning of Constitution. Where the jurisdiction of the court over the person and the subject-matter is not questioned, its action however erroneous, is due process of law within the meaning of the Constitution.

6. INSURANCE: Contract of Insurance Held not to be Effective Until Date of Delivery of Policy to Insured. Where life insurance agent after soliciting insured delivered him a receipt containing an agreement that under certain contingencies an insurance contract would be entered into, held that the contract of insurance did not become effective until the date of the delivery of the policy.

Appeal from the Circuit Court of Chariton County.—
*Hon. Arch B. Davis,* Special Judge.

REVERSED AND REMANDED (*with directions*).

*Roy McKittrick* for respondent.

*Jones, Hocker, Sullivan & Angert* and *Charles B. Welliver,* of Counsel, for appellant.

TRIMBLE, P. J.—This is an action upon a policy of insurance for $5000 on the life of plaintiff's husband, George T. Johnson. A jury was waived and the cause was tried by the court with the result that a judgment was rendered for defendant. The plaintiff appealed.

After the insured paid 5 annual premiums, he failed to pay any more. So that, at the expiration of the 5th

premium year, the only right insured had under the policy was extended insurance for three years. The question is, did he die within the three years? The answer to this depends upon when the premium—or contract—insurance ended and the extended insurance began, and this last, in turn, fixes the date when the 3-year period of extended insurance ended. If insured died after that, the judgment for defendant is right.

It is insurance practice (recognized and approved by statute, sec 6161, R. S. 1919), to consider a person's insurance age as his age at his then nearest birthday. And, according to this method of fixing insurance age, the defendant did not insure persons above the age of 60. In other words, after one became more than 60 years and six months old, he was not insurable in the defendant company. The annual premium, on a policy of $5000, for one whose insurance age was 60, was $315.25; and in companies where persons over the insurance age of 60 are insured, the rate calls for a larger premium than the above amount.

The application for the insurance on Johnson's life was taken from insured by defendant's field-agent in Chariton County, Missouri, on November 16, 1911. On that date Johnson lacked eight days of arriving at the insurance age of 61. In other words, if he was to be insured in the defendant company at all, and obtain $5000 of insurance on the premium rate for a person 60 years old, the application for the insurance had to be made before he arrived at the insurance age of 61. Insured was so told, and he therefore concluded to make the application rather than postpone the matter as he was about to do. He thereupon signed the application, executed his note to Simons for $315.25 due in thirty days with interest at eight per cent from maturity, and delivered both application and note to Simons. Thereupon Simons executed and delivered to insured what the agent terms a "binding receipt" for the $315.25 and sent the application to the defendant at its Home Office in Indianapolis, Indiana, to which he

attached the ''Stub'' of the Binding Receipt. On the back of the application, the Binding Receipt was also referred to and its number 63,227 was stated, being placed there, however, by the agent after it was signed by insured. The application provided that it would be completed by the applicant submitting to a medical examination, which was done on the next day, November 17, 1911, and the examining physician sent his medical report direct to the Company, the agent having nothing to do therewith. The application and the medical examiner's report were received at the Home Office on November 20, 1911. The application was approved by the defendant's Home Office Medical Director in Indianapolis on December 5, 1911. The policy, dated November 16, 1911, was issued December, 6, 1911, and was mailed to Simons, the agent, on the same day. The policy was received by Simons on December 8, 1911, and on December 18th of that year Simons delivered it in Chariton County, Missouri, to insured, who at the same time gave Simons a check for the $315.25 premium and took back the note he had given for that amount. Thereafter insured pair four other premiums of $315.25 each, as follows: November 18, 1912, November 17, 1913, November 6, 1914; and November 10, 1915, but no others. Insured died on December 15, 1919. There were, therefore, five years of primary—or contract—insurance, which ended on some date in the year of 1916 (according to when such primary insurance began), and three years of extended insurance, which ended on some date in the year 1919 (according to when the extended insurance began); and, therefore, whether insured died within or outside of the extended insurance period depends upon when the primary insurance began. The determination of this date solves the main question herein. If the primary insurance did not begin until the policy was delivered, to-wit, December 18, 1911, then the period of extended insurance did not expire until December 18, 1919, and, as insured died three days prior to that

date, his death occurred within such period, and the insurance was in force. If, however, by reason of the terms of the application, policy and the so-called binding receipt considered as a part of the insurance contract, the primary insurance began on its date November 16, 1911, or began on December 5, 1911, the date insured's application was approved by the defendant's Medical Director, then the extended insurance period ended either on November 16, 1919, or on December 5, 1919, which, in either case, was prior to insured's death, and, in that event, the extended insurance was not in force. Plaintiff contends the primary—or premium—insurance began on December 18, 1911, when the policy was delivered to him, and ended on December 18, 1916, and the extended insurance began then, and, running for three years, ended on December 18, 1919. Defendant contends that the primary or premium contract insurance began on the date of the application, November 16, 1911, and that therefore the extended insurance ended November 16, 1919.

The application states that:

"I, George T. Johnson, apply to the American Central Life Insurance Company, of Indianapolis, Indiana, to insure my life in the amount of Five Thousand Dollars .. . . the *annual* premium to be *payable in advance* and *each insurance year to end on the 16th day of November,* and as an inducement to said Company to make said insurance, and as a consideration therefor, I agree.

. . . . . . . . . . . . .

"That there shall be *no contract of insurance until a policy shall have been delivered to me* and the premium paid to said Company, or its duly authorized agent, *during my lifetime and good health.*

. . . . . . . . . . . . .

"That no statements, promises or information made or given by the person soliciting or taking this application shall be binding on the Company, unless such

statements, promises or information be reduced to writing and presented to the officers of the Company, at the Home Office, in this application, and this *application and the policy* hereby applied for, *taken, together, shall constitute the entire contract* between the parties thereto.''

The ''binding receipt'' was contained in and taken from a ''stub-book'' furnished the agent by the Company. The evidence as to the giving of this receipt was furnished by the agent Simons over plaintiff's objection that he was incompetent because the insured was dead. There is no evidence that the giving of the receipt was because of the peculiar circumstances that insured was in eight days of being beyond insurance age. On the contrary the evidence of the agent is that he gave the receipt to *everyone* of whom he collected the premium and the agent says he collected from all of them, i. e., those making application for insurance. The agent further testified that he told insured he could not insure him unless he insured him before the 24th of November; that he did not tell insured that for the policy to be effective it would have to be dated November 16th or that it would be delivered to him prior to November 24th, the day he would arrive at the insurance age of 61; that there was no special agreement with reference to insured's age being so near 61 except that insured wanted to defer buying life insurance, and he, the agent, told him he couldn't insure him unless he insured him before the 24th of November, that the policy ''had to be written prior to the 24th day of November.'' But in the next breath the agent explained that *what he meant* was that the *application had to be taken before the 24th.* The agent said also that the rate he charged insured was the rate at the insurance age of 60.

The so-called binding receipt which the agent gave insured upon the execution of his note for the premium, reads as follows:

"No. 63227     $315.25   Shannondale, Mo., Nov. 16, 1911.

## CENTRAL AMERICAN LIFE INSURANCE COMPANY.

of Indianapolis, Indiana.
The Agent Collecting on this Receipt Has no Authority
to Collect for More Than the First Years
Premium.
Received of George T. Johnson
Three hundred-fifteen 25-100 Dollars
in full for the first annual premium on $5000 thousand
dollars insurance.   The insurance will be in force from
the date of approval of the application by the Medical
Director.   In case the policy shall not be issued within
sixty days after the application, including the medical
examination, shall have been completed, the money herein
receipted for shall be returned; provided, that if the
applicant refuse to complete the application, the com-
pany may retain the premium as liquidated damages.
Not Valid Unless Countersigned by
L. A. Simons, Agent.
                    H. M. WOOLLEN, Vice-President."

The stub heretofore mentioned as having been at-
tached to the application and sent by the agent to the
Company, contained memoranda, made thereon by the
agent, in reference to this receipt, from which the Com-
pany, knowing the form thereof, could know or formu-
late the exact terms of the receipt the same as if a copy
thereof has been sent along with the application.

The policy stated that it was issued "in considera-
tion of the receipt of a premium of $315.25 on the 16th
of November, 1911, and of the payment of a like pre-
mium thereafter" and then provided that the applica-
tion was a part of the policy; that the *policy and appli-
cation "shall constitute the entire contract between the
parties hereto;"* that the payment of the first annual
premium is a condition precedent to the taking effect
thereof, and that the policy should not become binding
upon the Company "until said premium is actually paid

during the lifetime and good health of the insured;" that a grace of 31 days was granted for the payment of every premium after the first year; that if the death of the insured occurred during the period of grace the unpaid portion of the premium for the then current policy year should be deducted from the amount payable; that all premiums were to be due and payable annually in advance at the Home Office; that if the premiums were not paid on or before the day when due, the policy should become void; that it should be nonforfeitable after it "shall have been in force three years as hereinafter provided;" shall be incontestable "after premiums for two years have been paid thereon except for nonpayment of premiums;" that there should be self acting extended insurance "after three years' full annul premiums shall have been paid."

Plaintiff contends that these various provisions concerning the payment of *annual* premiums and the existence of the insurance for a certain number of years together with the fact that though the policy was dated November 16, 1911, and the application said the insurance year was to end on November 16th, which made them exactly one year apart, yet all these things clearly show that the intention of the parties to the insurance contract was that the payment by insured of *each* of the annual premiums provided for in the insurance contract, entitled the insured to twelve calendar months' insurance, and, therefore, the payment of the *first* annual premium of $315.25 entitled him to a full years' insurance the same as the other years; Whereas, if, as defendant contends, the insurance year ended on November 16th, insured obtained, for the first annual premium, only 10 months and 28 days' insurance instead of one year. And that since the application provided that there was to be "no contract of insurance until a policy shall have been delivered" and, as both application and policy provided that the two taken together "shall constitute the *entire* contract," the so-called binding re-

ceipt did not constitute any part of such contract nor have any effect in causing the insurance to come into existence at any time sooner than the date of the delivery of the policy, to-wit, December 18, 1911. Consequently, plaintiff says the premium—or contract—insurance ended December 18, 1916, and the period of extended insurance ran until December 18, 1919, and insured having died three days prior to that date, his death occurred while such insurance was in effect.

Defendant, however, contends that the application was made a part of the insurance contract, and provided that "each insurance year shall end on November 16th" and that this was done for the reason that eight days after November 16, 1911, the date of the application, insured would have been of the insurance age of 61 years and not only would have been uninsurable in defendant's company but could not have gotten insurance in any other company at the rate provided for the insurance age of 60, the rate which he got; and therefore these two things constitute the consideration he received for the insurance period on the first premium being less than one year. Defendant also says that not only does the insurance contract provide that the *insurance* year shall end on November 16th, which is so definite and plain as to need no construction, but that the parties to the contract by their acts (the Company demanding and insured paying, for five years, the premiums on or before November 16th or within the grace period thereafter), have construed the contract as being that the insurance year ended on November 16th and not December 18th. Furthermore, defendant argues that the "binding receipt" was made a part of the application by means of the "stub" (containing an abstract of the receipt) attached to the application and, therefore, the provision in the receipt that "the insurance will be in force from the date of the approval of the application by the Medical Director" does no violence to, but complies with, that provision in both the

application and policy which says that the two taken together "shall constitute the entire contract."

Defendant also takes the position that as the application provides that "no statements, information or promises made or given by the person soliciting this insurance or taking this application, shall be binding on the Company *unless* such statements, promises or information be reduced to writing and presented to the officers of the Company, at the Home Office, in the application" this means that such statements, information or promises, communicated in writing by means of the stub or abstract of the receipt attached to and going with the application, *are binding* and are *a part of the contract;* and although the application says "there shall be *no contract* of insurance until a policy has been delivered to me . . . during my lifetime and good health," yet as the receipt, which through the stub attached to the application became a part of the contract), says "the insurance will be in force from the date of the approval of the application by the Medical Director" this is a *modification* of the contract otherwise made by the application and policy, whereby the insurance *began* as of the date of the application, November 16, 1911. Wherefore defendant says there is neither conflict nor ambiguity in the insurance contract as to when the insurance began.

It will be observed, however, that the receipt nowhere provides that the insurance shall begin as of the date of the receipt or of the application. The receipt says the insurance will be *"in force* from the date of the approval of the application by the Medical Director." If no insurance was in force until then, how could it begin until that date? Surely, even under the receipt, insured had no insurance until then. Consequently, it does not logically follow that if the receipt is a part of the contract, therefore the insurance began on the date defendant contends for, to-wit, November 16th. Nor does it follow that because the application says the

insurance year shall end on November 16th, this absolutely controls as to when it was to begin, to the exclusion of the other provisions of the contract in that regard, and that consequently there is no conflict or ambiguity in the contract concerning that matter.

Nor can it be said that the provision that the insurance year is to end on November 16th, taken in connection with the giving of the binding receipt and the fact that insured lacked only eight days of being of the uninsurable age of 61, made the insurance begin on November 16th. Defendant's position and argument tacitly assumes, as its main support, the premise that the insurance had to go in force prior to November 24, 1911. But the evidence nowhere shows this. The receipt itself shows to the contrary, because it does not put the insurance into force until the application is approved by the Medical Director which was not until December 5th which was *after* insured had become of the insurance age of 61. And the evidence of defendant's agent, and its witness, is that there was no special agreement made with insured except that the *application* had to be made before November 24th, and that when he *testified* that the *insurance* had to start within eight days he *meant* that the *"application had to be taken before the 24th;"* that he never told insured the policy would be returned to him prior to the 24th but that he would deliver it to him on his next trip, and as to when the application would be acted upon, the agent testified "I don't just remember exactly what I told him, I presume I told him what I tell everyone, somewhere from ten days to three weeks." Moreover, the so-called "binding receipt" was not a special contract given to insured in this case so as to cover his situation wherein he lacked eight days of being 61 or to others similarly situated, but was, as the agent's evidence shows, the same receipt he gave to everyone when he took their application and collected the first premium. So that it seems clear that the insurance did not have to *begin* prior to

November 24 or the defendant would not have insured him, but that, if defendant would not insure anyone after he became of the insurance age of 61, as defendant's field agent Simons claims, defendant waived it in this case, and plaintiff pleaded such waiver. Where then was there any consideration for insured receiving less than one full year's insurance for the first full annual premium? Neither the binding receipt nor the provision in the application that the insurance year should end on November 16th, made the insurance begin at any time prior to November 24th or while insured was still 60. For at the best, even under the terms of the binding receipt, considered as a part of insurance contract, no insurance began or went into force until December 5th. Defendant never did agree that the insurance should begin earlier than that. Consequently, insured received nothing in return for the first premium's insurance period being less than one year.

Why construe the contract in such way as to say there was a consideration for insured's taking less than a year's insurance for the first premium when every provision in the contract is directly to the contrary; and what consistency is there in saying in one breath that the insurance began on November 16th, i. e., that there was a full year's insurance for that premium, and in the next breath that insured obtained a consideration for receiving less than a year's insurance for the first premium. It would seem that for the contract to be consistent and free from ambiguity as defendant claims it is, it should either have allowed the insurance to go into effect at once upon the signing of the application or at least while insured was of the insurance age of 60 or have explicitly provided that he was not to get one year's insurance for the first premium. It is not shown that the fact insured was of insurance age of 61 when the insurance went into effect was a consideration for any such agreement as defendant now seeks to construe into the contract for the evidence of Simons, the

field agent, and of Buttolph, the actuary, both show that the rate at which Johnson was insured was determined by the insured's age at the time he signed the application. As Buttolph says, "he received the rate at age 60 because the application had been taken by the agent when he was nearer age 60." It is true Buttolph goes on to say that insured had in the application requested the company "to date his policy as of the date the application was taken" but that is merely his conclusion on that matter and neither the evidence nor the application shows such to be the fact.

But is there anything in the contract which shows that the insured was to receive less than one full year's insurance for the first annual premium or that the Company received or suffered the above detriment *in return* for such lessened first period of insurance on the first premium, *rather* than that the Company *merely waived* its right to refuse to insure anyone over 60? There is not, unless it be contained in the provision of the application that the insurance year shall end on November 16th. But that cannot be considered as the *controlling* provision in the contract as to when the insurance should begin, for several reasons: 1. There is no provision in the insurance contract that the insurance period based on the first premium should be less than one year. 2. The terms of the insurance contract call for a *full* year's insurance for *each* annual premium. 3. Nowhere in the insurance contract, not even on the so-called binding receipt considered as a part of such contract, did the Company agree that the insurance should begin on the date of the application, but the provisions making the insurance begin later were retained in the contract, making it begin either on December 5th, according to the receipt, or on the delivery of the policy in the lifetime and good health of insured, according to the application and policy, which was December 18th. 4. Even if the prior oral negotiations could be relied upon or looked into to aid in determining whether there was any agree-

ment that the insurance should begin on November 16th or that there should be less than a full year's insurance for the first year's premium, no basis whatever can be found in the evidence to show that such agreement was made. 5. The fact that an annual premium is by an insurance contract made payable on a certain day annually has never determined the question when the insurance was to begin, where there were provisions postponing the commencement of the insurance to a date later than the date of first payment which fixed the annual date of payment thereafter. In the cases holding that an insured is entitled to a full year's insurance in return for a full year's premium, and that therefore the insurance did not end until a year after the insurance thereunder began, the fact that the premium was by the contract made payable on a certain date, did not determine when the insurance began or ended, nor did it have any effect whatever upon that matter. In fine, the insurance contract in the case at bar is just like any other insurance contract wherein the policy was dated as of the date of the application and the premiums were made payable annually thereafter on that date, yet, nevertheless, it was adjudged that the time when the insurance was to go into effect controlled, and gave the insured a full year's insurance from that time; and this fixed the date when the insurance ended. [Halsey v. American Central Life Ins. Co., 258 Mo. 659; Chestnut v. Security Mutual Life Ins. Co., 232 S. W. 203; Stout v. Missouri, etc., Casualty Company, 179 S. W. 993; McMaster v. New York Life Ins. Co., 183 U. S. 25, Stinchcombe v. New York Life Ins. Co., 80 Pac. 213.]

But the so-called binding receipt says the insurance will be in force from the date of the approval of the application by the Medical Director; and, since this was done on December 5, 1911, how about that? If that provision in the receipt controls and put the primary insurance into effect regardless of any other provision of the insurance contract, then the insurance began on De-

cember 5th and made the extended insurance end on that date, which was 10 days before insured died.

There seems to be some difficulty, even on the part of the defendant, to determine just what the so-called binding receipt is. In the defendant's original brief filed herein, it is said, in one place, that the receipt was a mere *proposal* for a contract, and in another place it is argued that the receipt became a *part of the insurance contract* through the delivery of the receipt to insured and the attachment of the stub or abstract of the receipt of the application. But in the brief filed on this rehearing, defendant argues that there were *two* contracts, one created by the receipt for *temporary* insurance and the other created by the application and policy for *permanent* insurance.

But the receipt, when analyzed, is not a contract of insurance, but rather an agreement between the parties that, under certain contingencies, a contract of insurance would be made. In other words, it is not a contract of insurance but an agreement preliminary to a contract of insurance. Note its language: "In case the policy shall not be issued within 60 days after the application including the medical examination, shall have been completed, the money herein receipted for shall be returned; provided that if the applicant refuse to complete the application, the Company may retain the premium as liquidated damages." It never became a completed contract in and of itself, for the only insurance contemplated in it is the insurance created by the application and policy; and there was no notice to insured that the application was approved until the policy was delivered. The receipt could not, in and of itself, become a contract, until insured was notified that it was accepted and approved. [Crohn v. United, etc., Travelers, 170 Mo. App. 273, 282.] And no such notice was given until the delivery of the policy, and when that was done, the *policy* and not the *receipt* was in effect as the contract. At any time prior to the delivery of the

policy, the application could have been rejected by defendant, hence there was no contract of insurance in existence except the policy contract and then not until it was delivered.

If the so-called binding receipt can in any view be regarded as a contract in and of itself, it amounted only to this: That by it defendant promised the insured "The insurance *will be,* not is, but will be in the future, in force when the Medical Director approves." But instead of keeping this promise and making the insurance go into effect on that date, the defendant delivered a policy to insured which made the insurance go into effect on the date of the policy's delivery. The insured accepted the policy as it was with the receipt promise unfulfilled, and paid the premiums on said policy; and now the defendant turns about and says the contract was that the insurance went into effect on the date of the application or at the very latest on the date of the Medical Director's approval. The very most that can be claimed for the receipt is that it, through the stub attached to the application, became a part of the entire insurance contract. This, however, could only result in making it merely one of the provisions thereof, and not that its provisions *controlled or superseded* the other provisions in the rest of the contract. In other words, even if it be conceded that the receipt became a part of the contract, the result is the same as if there had been no receipt, but the contract, made up of the application and policy, had said in one place that the insurance should be in force from and after December 5th, and in another place that there should be "no contract of insurance until a policy shall have been delivered to me . . . during my lifetime and good health" (which was on another and a later date), and that the application and policy, taken together, "shall constitute the entire contract." In other words, the insurance contract herein, even considered as made up of the application receipt and policy, contains various pro-

20—211 M. A.

visions giving different times as to when the insurance was to go into effect, and therefore there is a conflict and an ambiguity in that regard. It is well settled that where such exists, that construction which is most favorable to insured will be adopted. [Goodwin v. Provident Society, 32 L. R. A. 472, 476; Stout v. Missouri, etc., Casualty Co., supra, and the other cases heretofore cited.] Certainly that construction ought not to be adopted which, gives to the insured *less* than a full year's insurance for a full year's premium, when the contract expressly provides therefor; nor should the Company, having such different and inconsistent provisions in its contract, be allowed to say, after time has developed the facts showing which provision will prove most favorable to it, that *that* one is *absolute* and *controlling.* We are therefore of the opinion that neither the so-called binding receipt nor the fact that the application says the insurance year is to end on November 16th, distinguishes this case from those herein above cited wherein it was held that a full year's premium entitled an insured to a full year's insurance and this determined when the insurance terminated.

Point is made that the insurance contract is an Indiana contract and governed by the laws and rules of decision in that State. The contract was solicited in Missouri, applied for in Missouri and made complete by delivery in Missouri. It is therefore a Missouri contract. [Crohn v. Order of United Commercial Travelers, 170 Mo. App. 273; McMaster v. New York Life Ins. Co., 183 U. S. 25, 37.]

Defendant, in its answer, asserted that if its contention as to when the period of extended insurance ceased was not upheld, then such holding "deprives it of its property and abridges the freedom of the parties to contract in violation of Fourteen Amendment" and on this contention has filed a motion to transfer this cause to the Supreme Court. This, however, neither presents a constitutional question, nor does it involve

a construction of the Constitution. If it did, then every losing litigant could, by asserting that if judgment went against it, the Constitution was involved, and thereby get the case into the Supreme Court of the State and final-into the Supreme Court of the Nation. In this case the jurisdiction of the court over the person and subject-matter is not questioned, and hence its action, however erroneous, is due process within the meaning of the Constitution. [Davidson v. Hartford Life Ins. Co., 151 Mo. App. 561, 564-67.] The question in the case is what is the meaning of and construction to be placed on the contract, not the meaning of or construction to be placed on the Constitution either State or National. Defendant cannot by such assertion give jurisdiction to either the State or National Supreme Court. [McManus v. Burrowes, 280 Mo. 327, 333.] The motion to transfer to the Supreme Court of the State is, therefore over-ruled.

Being of the opinion that the trial court erred in construing the insurance contract as terminating the insurance on November 16th, and that, under the rule applicable to the construction of insurance contracts where there are conflicting and ambiguous provisions, that construction should be applied which is favorable to insured rather than to the insurer, we think the judgment should be reversed and the cause remanded with directions to render judgment for plaintiff for the amount due on the policy with interest from February 6, 1920, less the amount to be deducted for forborne premiums as provided in section 6153, Revised Statues 1919. It is so ordered. All concur.

### ON MOTION FOR REHEARING.

TRIMBLE, P. J.—We do not understand that our decision in the above case is in conflict with the holding in State ex rel. v. Robertson, 191 S. W. 989. It was there held that there was no insurance contract created in the receipt or elsewhere. True, in that case the Su-

preme Court said that the receipt would have been a completed contract had the entire application been approved. But there are a number of things which, in our view, distinguish the present case from that. In the Robertson case the application refers to the receipt and says the policy is applied for *"in accordance with the provisions of the receipt* of date and number according to this application which I hereby accept and agree to the conditions hereof.'' This reference to the receipt in the application, which the insured in that case signed, made the receipt a part of the insurance contract had the application been approved. But no such reference was made to the receipt in anything the insured herein signed or agreed to. After he executed the application and gave his note for the premium, the agent handed him the receipt and then pinned the stub of the receipt, which was an abstract thereof, to the application when the agent later sent it to the Company. This was all that was done to make the receipt either a separate, independent or completed contract in itself, or a part of the insurance contract contemplated by the application. As stated in the opinion, the receipt never became a separate, independent contract of insurance in itself, for the only insurance contemplated in it is the insurance created by the application and policy, and these two say there was to be *"no* contract of insurance until a policy shall have been delivered'' and that the two—application and policy—''shall constitute the *entire* contract.'' So that the insured's mere reception, without more, of the receipt when it was handed to him by the agent after the application for the *only* insurance contract in contemplation had been executed and paid for, does not, it seems to us, make the receipt a separate, independent and completed contract of insurance in itself; but the most that can be claimed for the receipt is that it became part of the entire insurance contract. However, even if it did, still the provision in the receipt upon which defendant relies

as to when the insurance was to begin does not conclusively control, because of the directly contrary provision elsewhere in the contract, made up of the application and policy, namely, that there should be *"no contract of insurance"* until the policy was delivered and that the application and policy should constitute the "entire contract." Neither of these provisions was present in the Robertson case.

It is said the statement in the opinion that there was no notice given insured of the approval of the policy until it was delivered to him is erroneous. The agent, without testifying that he deposited in the mails a properly addressed and stamped envelope containing a letter notifying insured that the policy had been issued and would be delivered the next time he came around, merely attempted to say that he "wrote" plaintiff to that effect. This testimony, upon objection, was stricken out by the court. Hence we said there was no evidence of notice in the record until the notice given by delivery of the policy.

The motion for rehearing is overruled. All concur.