THE NATIONAL CITY BANK OF ST. LOUIS, a Corporation, v. MISSOURI STATE LIFE INSURANCE COMPANY, a Corporation, Appellant.— 57 S. W. (2d) 1066.

Division Two, March 3, 1933.

*Jourdon & English* and *Allen May* for appellant.

184

*Leahy, Saunders & Walther* and *Jeffries, Simpson & Plummer* for respondent.

FITZSIMMONS, C.—Defendant, Missouri State Life Insurance Company, appeals from a judgment of the Circuit Court of the City of St. Louis in the sum of $20,000 and accrued interest, in favor of plaintiff as assignee of the beneficiary named in a policy of insurance written by appellant upon the life of Sim J. Riley.

The question presented for our determination is whether the policy was in effect when Riley died on November 19, 1926. The dates material to the controversy are:

March 19, 1923, insured made application to appellant through its agent, Lawton-Byrne-Bruner Insurance Company, for the policy.

March 30, 1923, appellant made delivery of the policy to insured through its agent, Lawton-Byrne-Bruner Insurance Company.

May 23, 1923, Lawton-Byrne-Bruner Insurance Company, appellant's agent, made payment out of its own funds to appellant of the first semi-annual premium.

January 2, 1924, insured Sim J. Riley paid to appellant's agent the amount of the first semi-annual premium.

November 19, 1926, the insured Sim J. Riley died.

The petition, which is in apt form, alleged the execution of the policy, a full performance of all its terms by Riley, his death and the refusal of appellant to furnish proofs of death or to pay the amount of the policy.

Appellant in its amended answer alleges that the premiums, payable on a semi-annual basis, were due on March 19 and September 19 of each year during the term of the policy as recited therein.

Respondent in its amended reply alleges that the premiums were payable on May 23 and November 23 of each year because the first semi-annual premium was not actually paid to appellant until May 23, 1923, upon which date the insurance first became effective, and the insurance years began to run.

The semi-annual premium which, according to appellant's theory was due September 19, 1926, was not paid when due nor within the grace period of thirty-one days thereafter, nor within the automatic continued insurance period of seven days after the grace period. If appellant is right in its theory of the premium payment dates, the policy by its terms was automatically forfeited before Riley's death on November 19, 1926. On the other hand, if the premium periods began May 23 and November 23, the policy was in effect at the time of Riley's death.

The trial court adopted to the full respondent's effective-on-delivery-and-payment theory of the fixation of the premium payment dates. It gave an instruction to the effect that, if no amount was paid to the appellant for the first semi-annual installment of premium on the policy in suit prior to May 23, 1923, and if thereafter six additional semi-annual premiums were paid to appellant, the verdict should be in favor of respondent. The court refused to give appellant's instructions in the nature of demurrers and other requested instructions to the effect that "the policy of insurance in suit required that all premiums after the year 1923 be paid on or before the dates mentioned in the policy," namely March 19 and September 19, of each year. The parties cite many authorities in support of their respective theories. But appellant leans most heavily upon Prange v. International Life Insurance Company, 329 Mo. 651, 46 S. W. (2d) 523, decided in Division One of this court December 21, 1931. Respondent, on the other hand, bases his principal argument upon McMaster v. New York Life Ins. Co., 183 U. S. 25, 46 L. Ed. 64; Halsey v. American Central Life Insurance Co., 258 Mo. 659, 167 S. W. 951, and cases subsequently decided, upon these authorities.

The policy sued upon was for term insurance. The company agreed to pay "to John J. Bailey, Business Partner of the Insured, and Beneficiary, immediately upon receipt of due proof of the death of Sim J. Riley, the insured, Twenty Thousand Dollars, which is the face amount of this policy, provided such death shall occur within the term of five years from March 19, 1923, and while this policy is

in full force." The policy contained two options, usual in term policies. By the first, the policy at any time while it was in full force might be exchanged for a life or endowment policy on the annual premium plan on the lives of persons of the age of the insured at the time of the issuance of the original policy, and upon payment of the excess of premiums of the new policy over the old. By the second option the insured might exchange the term policy for a life or endowment policy at the age attained at the time of the exchange and at the rate of premium of the attained age. The insured died within the five-year term limit of the original policy without any exchange of policies having been made. The consideration was stated in the last paragraph as follows:

"This Insurance Is Granted in consideration of the application herefor and of the payment in advance of Eighty-eight and No/100 Dollars, and of the payment of a like amount on the nineteenth day of September, 1923, being the premiums for the first year's insurance under this policy ending on the 19th day of March, 1924. The insurance will be continued thereafter upon the payment of the semi-annual premium of Eighty-eight and no/100 Dollars, on or before the nineteenth day of each of the months of March and September in every year during the continuance of this policy, until premiums for five policy years, including the first, have been paid."

The application, which in express terms and by attachment was made a part of the policy and with the policy constituted the entire contract contained the following provisions:

"I agree on behalf of myself and of any persons who may have or claim any interest in any policy issued hereon:

"(a) That if the first premium for the insurance hereby applied for be paid to the Agent at the time of making this application in exchange for the Company's Advance Premium Receipt therefor, corresponding in date and number with this application and signed by the Company's Agent, the policy, if and when subsequently issued by the Company in accordance with the terms of and for the amount and on the plan applied for in this application and delivered to me or my legal representative, shall, unless otherwise specifically requested, be dated and be effective in accordance with the provisions of such policy on and from the date of the medical examination." The application further provided:

"(b). That if the Company shall not issue the policy for the amount and on the plan applied for, the amount paid as premium shall be returned on surrender of this receipt;

"(c). That if the first premium for the insurance hereby applied for be not paid to the Agent at the time of making this application, or if only a part of such premium be paid as aforesaid, or if the policy be issued for a less amount or on any other plan than that for which this application is made, the insurance shall not be effective until

the policy is delivered to and accepted by me and the first premium thereon actually paid during my lifetime and continued good health, but upon such delivery, acceptance and payment during my lifetime and continued good health, the policy shall be deemed to have taken effect from and shall bear the date of approval at the Home office or other date specifically requested by the applicant, on which date in each year thereafter subsequent premiums will be due and payable.''

■ I. In our opinion this case should be ruled upon the principles applied to the case of Prange v. International Life Insurance Company of St. Louis, 329 Mo. 651, 46 S. W. (2d) 523. In that case this court, in Division One said, l. c. 526: ''The insured was a business man of large affairs; no fraud or deceit was practiced upon him. When he accepted the policy on the 18th day of May, 1922, he must have known that for the payment he was then making he was getting nothing more than term insurance for a term beginning on that date and ending April 4, 1923. Whether he was receiving an adequate consideration for the payment rested entirely with him. He may have considered that the securing of the premium rate of age thirty-eight, by the predating of the policy, was more beneficial to him than a month and a half's insurance. Whether it was or not is not within our province to determine. ■ Courts are without authority to rewrite contracts, even insurance contracts, although it may appear that in some respects they operate harshly or inequitably as to one of the parties; they discharge their full duty when they ascertain and give effect to the intentions of the parties, as disclosed by the contract which they have themselves made.'' (Authorities cited.)

In the Halsey case, 258 Mo. 659, 167 S. W. 951, decided by this court and in the McMaster case, 183 U. S. 25, decided by the United States Supreme Court, and in other cases citing one or both of these and quoted by respondent in its brief, the rule seems to be that, if the policy provides for the payment of premiums annually, semiannually or quarterly on or before certain days, occurring periodically after the date of the policy, and if the policy further provides that it shall not take effect until it is delivered and the first premium paid; and if in a given case a policy is delivered and the first premium is paid on a day subsequent to the date, then in the event of an issue of liability for want of timely payment of premiums, the premium paying periods are to be ·determined from the date of delivery of the policy and of payment of the first premium.

■ But the basis of this rule, in every instance, is some conflict of ·provisions in the particular policy in suit. Thus in McMasters v. New York Life Insurance Co.. 183 U. S. 25. 46 L. Ed. 64, the United States Supreme Court said: ''We are dealing purely with ·the question of forfeiture, and the rule is that if policies of insurance

contain inconsistent provisions or are so framed as to be fairly open to construction, that view should be adopted, if possible, which will sustain rather than forfeit the contract. [Thompson v. Phenix Insurance Co., 136 U. S. 287, 34 L. Ed. 408, 10 Sup. Ct. Rep. 1019; First National Bank v. Hartford Fire Insurance Co., 95 U. S. 673, 24 L. Ed. 563.]'' And in the Halsey case this court, after declaring that the insured was entitled to one full year's protection from the day of delivery of the policy and not from the date of its execution, said: ''If this is not the true meaning of the parties then the appellant is driven to the conclusion that the deceased paid for a full year's insurance, but under the terms of the policy he was only entitled to about eleven and one-half months of insurance. This, nor any other court should allow an insurance company to thus stultify itself after taking the premium for a full year, and then escape liability by interposing the technical question that by the application for the policy the insured agreed to pay the premium long before it was due.''

II. The instant case is distinguishable from the cases relied upon by respondent in several essential details. The first and most obvious is that in none of those cases was delivery of the policy by the insurance company and payment of the first premium by the insured separate acts done at different times. In all those opinions in which the fact of delivery and first payment was stated, it was one transaction, done at the same time. Among these cases are: McMaster v. New York Life Insurance Co., 183 U. S. 25, 46 L. Ed. 64; Hals--- v. American Central Life Insurance Co., 258 Mo. 659, 167 S. W. 951· Landrigan v. Missouri State Life Insurance Co. (Mo. App.), 234 S. W. 1042; State ex rel. v. Allen et al., Judges, etc., 295 Mo. 307. 243 S. W. 839 (certiorari of the Landrigan case ante): Newman v. John Hancock Mutual Life Insurance Company, 7 S. W. (2d) 1015; Johnson v. American Central Life Insurance Co., 212 Mo. App. 299, 249 S. W. 115; Stout v. Missouri Fidelity and Casualty Co. (Mo App.), 179 S. W. 993. In one case cited by respondent, Missouri State Life Insurance Company v. Salisbury, 279 Mo. 40, 213 S. W. 786. the first premium was not paid and for that reason, among others, judgment in favor of defendant and against plaintiff for the amount of the policy in controversy was reversed.

In the instant case, the agent of the company delivered the policy to Riley, the insured, on March 30, 1923, and took his receipt for it. But Riley did not at the time pay the first semi-annual premium, nor did he pay it until January 2, 1924, over eight months later, a time when, for the purposes of determination of insurance premiums, Riley was one year older than when he signed the application. It is true that appellant's agents out of their own funds paid the semi-annual premium to appellant on May 23, 1923, nearly two months after the

delivery of the policy. Of this act one of respondent's counsel at the trial said, by way of objection to certain record evidence of the payments: "Your Honor please, our contention is Lawton-Byrne-Bruner, (appellant's agents) were purely volunteers. They could not have been under any obligation to pay that." But in the briefs here the parties treat the first premium payment as of May 23, 1923.

Whether the first premium was paid on May 23, 1923, or on January 2, 1924, it neither is just nor logical that anyone claiming under the contract of insurance made by Riley should receive from the courts, by reason of Riley's tardiness in payment of the first premium, a more liberal construction of the contract than was given to the claimants in the cited cases where delivery and payment were one transaction. Delivery of the policy being for the insurer, it is reasonable that the latter, in certain circumstances, should be the one to suffer by any delay or lapse of time in performance. But payment of the first premium is the reciprocal act of the insured, and he should not by any dilatory conduct be permitted to enhance the risk of the insurer. We know that the application provides that if the first premium be not paid to the agent at the time of making application, the insurance shall not be effective until the policy is delivered and accepted by the insured and the first premium paid. But we are dealing with what respondent treats as inconsistent provisions. And we do not believe that the failure of Riley to pay the first premium when the policy was delivered should move us to give to the contract made a more liberal construction than our courts have sanctioned heretofore in order to save respondent from the consequences of the non-payment of premiums upon the specific days stated in the policy. If Riley had paid the first premium when he received the policy on March 30, 1923, respondent would receive but cold comfort from the Halsey, McMaster and other like cases.

III. Another reason why respondent should be outside the rules and principles of the Halsey and McMaster cases is that those were suits upon policies payable in the event of death whenever it occurred. This is a suit upon a term policy of insurance payable upon the death of Riley "provided such death shall occur within the term of five years from March 19, 1923." The guiding thought of the opinion in the Halsey case seems to have been one year's protection for one year's premium during the span of life of the insured. But if Riley had lived out the term of this policy and had paid premiums for semi-annual periods beginning May 23 and November 23 of each year, as respondent claims was his right, he would have made his last payment for less than six months protection, that is from November 23, 1927, to March 19, 1928. And if, as would seem more logical, he had calculated his premium year from January 2, 1924, the date of his actual payment of the first premium, he would have paid only

nine semi-annual premiums of which the last would have been for a shortened period of insurance. Therefore by his own delay he would not have enjoyed the benefit of six months protection for each semi-annual premium payment.

The options given to Riley to exchange the policy in suit for other policies do not alter the fact that the term of insurance under the policy in suit could not extend beyond March 19, 1928. It has been well ruled that when an insured exercises the privilege given to him by a term policy to exchange it for an ordinary life policy, the new policy creates a new contract. [Gans v. Aetna Life Insurance Co., 161 App. Div. 250, 146 N. Y. Supp. 453, affirmed 214 N. Y. 326, 108 N. E. 443, 58 L. R. A. (N. S.) 703.] The first opinion in this case states the essential difference between ordinary life policies and term policies in these words (146 N. Y. Supp. 1. c. 455):

''In the ordinary life policy the assured pays a level premium during the whole period, over which premium payments are extended. Under such policies the amount of premium paid during the earlier years is in excess of the sum actually needed for carrying the risk, which risk naturally increases year by year, with the result that the excess of premium paid during the earlier years provides a fund from which the deficiency incident to the later years is made up, which deficiency is termed 'reserve.' Term insurance is essentially different, being insurance for the specified term only; the premium being calculated on a basis which provides for such deaths only as occur during the term. The premium paid is 'level' during the specified term only, and increases with each renewal term. The premium in the case of term insurance is consequently lower than in the case of straight life insurance, the premium in the former case carrying no reserve, being based upon a sort of 'pay as you go' theory. See Willard's The A. B. C. of Life Insurance, p. 53.''

If respondent is sound in its argument that Riley was entitled to six months' protection for six months' premium paid and that the premium period was not fixed by the specifications in the policy, it should follow that, if Riley had lived, he should have insurance for five years from the date of the payment of the first premium despite the fact that by the terms of the policy the obligation of the insurer to pay the amount of insurance named upon the death of Riley was ''provided such death shall occur within the term of five years from March 19, 1923.'' The conclusion is untenable and the premise is a fallacy.

IV. But is there in the contract under examination ambiguities which should invoke the rule of the adoption of that construction which would sustain rather than forfeit the contract? The cases which present questions of inconsistent provisions construe insurance contracts in which either the application or the policy or both declare

without any alternative provision or exception that the insurance shall not be effective until the policy is delivered and accepted and the first premium paid during the lifetime and continued good health of the insured. Unhappy incidences of dates of policies, their delivery, and death result in suits. Here the application gave Riley the choice of paying the first premium at the time of making the application in return for the company's advance premium receipt. In this event the policy was to be effective on and from the date of the medical examination. The application and the policy were dated March 19, 1923. It is therefore a fair presumption that the medical examination which is not in the record was dated the same day. Riley did not elect to pay the first premium at time of application. If he had done so, he would have been entitled to six months' insurance from that date. ■ The delivery of a policy by the company to the insured is not essential to the completion, validity or enforcibility of a contract of insurance unless it is expressly agreed by the parties, as by a stipulation in the application or policy, that the contract shall not become effective until the policy is delivered to the applicant. [32 C. J. 1123.]

■ The application had the further provision that if Riley did not pay the first premium at the time of making application, the insurance should not be effective until the policy was delivered to and accepted by Riley and the first premium paid during his lifetime and continued good health. We will note in the next paragraph of this opinion that appellant waived the prompt payment of the first premium and that therefore the policy took effect from its delivery on March 30, 1923. But one case which we have examined has a somewhat similar provision for the payment of the first premium either upon application for or upon delivery of the policy with different effective dates according to the time of payment chosen. That is the case of Johnson v. American Central Life Insurance Co., 212 Mo. 299, 249 S. W. 115 There the insured paid the first premium at the time of application and the binding receipt provided that the insurance should be in force from the date of the approval of the application by the medical director. The requirement of approval by the medical director, who was at the home office in Indiana, caused a delay which, upon the death of the insured, caused the usual controversy as to the commencement of the premium periods. The scope of the provisions of the application in the instant case with respect to the effective date of the policy in consequence of the payment of the first premium either on the date of the application or of the delivery of the policy should take the case out of the class of "conflict of provisions" decisions upon which respondent relies.

■ V. A final consideration is sufficient with what has gone before to dispose of this appeal. Numerous Missouri cases, in which

the defense was that the first premium was not paid upon delivery of the policy, rule that such payment may be deemed to have been waived by the agent of the insurer, authorized to deliver the policy and to collect the premium. The theory of these decisions is that the clause in a policy to the effect that it shall not be effective until it is delivered and the premium paid is inserted solely for the benefit of the insurer. In James v. Mutual Reserve Life Assn., 148 Mo. 1, 49 S. W. 978, l. c. 980, this court said: "Insurance companies, by their course of business, practice, and conduct with respect to the payment of premiums, may waive the prompt payment thereof, and cannot afterwards take advantage of what would otherwise be available as a defense on the ground of forfeiture." (Authorities cited.) These decisions rest upon the principle of estoppel. To the same effect see Berryman v. Southern Surety Company, 285 Mo. 379, 227 S. W. 96, l. c. 100; Bell v. Missouri State Life Insurance Company, 166 Mo. App. 390, 149 S. W. 33; Malone v. State Life Insurance Co., 202 Mo. App. 499, 213 S. W. 877.

In the instant case respondent offered in evidence the records of appellant's agent in this transaction, the Lawton-Byrne-Bruner Insurance Company. These records showed that Riley had an open current account with appellant's agent for insurance premiums due. Some entries on this account predated more than a year the application of Riley for the policy in suit. At one time the balance of premium due from Riley to the insurance agency, according to a record by respondent, exceeded $2,400. The agent not only delivered the policy in suit to Riley without receiving from him the first premium, but it gave further proof of its waiver of payment by him by remitting to appellant the amount of the first premium, nearly eight months before Riley paid the premium to the agency. In addition the agency took from Riley, on delivery of the policy, on March 30, 1923, his receipt which recited that he found the policy entirely satisfactory and as applied for. The agency forwarded this receipt to appellant which received and accepted the same. In these circumstances, it would be held, in a proper case, that appellant was estopped to deny that the policy was in effect on March 30, 1923.

Respondent urges that appellant cannot set up a waiver of payment of the first premium because it was not pleaded. But the fact that "the first premium was not actually paid to the defendant until the 23rd day of May, 1923, and that said insurance did not become effective until said last specified date," was first alleged in respondent's amended reply. Under our Code, the reply is the last pleading, and "the allegation of new matter in the reply shall be deemed controverted by the adverse party as upon a direct denial or avoidance." [Sec. 800, R. S. 1929.] The waiver of payment, therefore, could not have been pleaded.

VI. In our opinion the trial court erred in submitting the case to the jury upon the theory that the semi-annual premium payment periods dated from May 23. Upon the issue joined and under undisputed evidence the verdict was in effect a directed one. As we see it, the verdict was misdirected and the judgment was for the wrong party. It is accordingly ordered that the judgment be and it is hereby reversed and the cause is remanded with directions to the trial court to enter a new judgment in favor of appellant (defendant below) and against respondent (plaintiff below). *Cooley* and *Westhues, CC.*, concur.

PER CURIAM:—The foregoing opinion by FITZSIMMONS, C., is adopted as the opinion of the court. All of the judges concur.