ALBERT N. EDWARDS, Respondent, v. SUN INSURANCE COMPANY, Appellant.

St. Louis Court of Appeals, March 31, 1903.

1. **Insurance, Fire:** SUIT FOR PROCEEDS OF POLICY: AGREEMENT BINDING FOR CONTINUATION OF POLICY. Where a firm of insurance agents issued a policy on a corporation's property, which by its terms was to take effect April 18, and the policy was deposited with a bank as collateral security for a loan, and thereafter, on April 24th, one of the agents went to the bank and obtained the policy for cancellation on his agreement that the insurance should be in force until other insurance was written in place of it, such agreement was binding that the policy should not be cancelled until other insurance had been substituted.

2. ——: ——: AGREEMENT WITHIN AGENT'S AUTHORITY. An agreement by an insurance agent who had issued a policy, on receiving the same from a pledgee for cancellation, that the insurance should not be cancelled until another policy of equal value had been substituted, was within the scope of the agent's authority.

3. ——: ——: AGENTS DID NOT REPRESENT ASSURED: NOTICE. Where insurance agents had written a policy on the property of a corporation in a company which they represented, which thereafter directed a cancellation of the policy, such agents represented the insurers only, and notice of cancellation to them was not notice to the insured.

4. ——: ——: AGENTS NOT MISLED: NOTICE. Where insurance agents had full knowledge of all insured's matters pertaining to its insurance, the agents were not misled or justified in believing that the bank had authority to surrender the policy or receive notice of its cancellation without notice to the insured.

5. ——: ——: ASSURED'S BOOKKEEPER: NOTICE OF CAN-
CELLATION. Where notice of cancellation of an insurance policy
was given to assured's bookkeeper, and it was shown that such
bookkeeper kept a record of the insurance policies carried on the
corporation's property, whether he had authority to receive notice of
such cancellation, which was binding on the company, was for the
jury.

Appeal from St. Louis City Circuit Court.—*Hon. H. D. Wood*, Judge.

AFFIRMED.

*Fyke Bros., Snider & Richardson* for appellant.

The court erred in refusing to give defendant's second instruction. No notice to Edwards, plaintiff, of the cancellation of the policy was necessary. Gillett v. Ins. Co., 73 Wis. 203; Antes v. Ins. Co., 84 N. W. 412; Hocking v. Ins. Co., 42 S. W. 451; Holbrook v. Ins. Co., 49 Pac. 555; Bank v. Ins. Co., 49 Pac. 688; Richmond v. Ins. Co., 33 Ark. 786; Ins. Co. v. Wolff, 54 N. E. 722.

*John H. Overall, Henry W. Bond* and *W. G. Schofield* for respondent.

(1) Defendant's first instruction was properly refused. A mere custodian of an insurance policy is not the person upon whom notice of cancellation is required to be served, nor can he waive the notice required by the policy. Rothschild v. Ins. Co., 74 Mo. 41. (2) The conditions of the surrender, by the bank being controverted, it was for the jury to construe the same. Davis v. Baldwin, 66 Mo. App. 577; Estes v. Hamilton B. S. Co., 54 Mo. App. 543; Willard v. Siegel Co., 47 Mo. App. 1; Belt v. Goode, 31 Mo. 128.

GOODE, J.—In some respects this action resembles the case by the same plaintiff against the Home Insurance Company, heretofore decided by this court (100 Mo. App. 695), but in vital points is materially different.

The Sun Insurance Company on April 12, 1901, issued a policy of insurance for $2,500 on the buildings of the American Base Ball & Athletic Exhibition Company of St. Louis to be in force from April 17, 1901 to April 17, 1902. Roeslein & Robyn, who are insurance agents and brokers in the city of St. Louis and local agents of the Sun Insurance Company in said city, issued the policy in question. The buildings covered by it were damaged by fire May 4, 1901, and this action was instituted to recover the proceeds of the policy.

Two special defenses were pleaded: the first, that when the policy was delivered, it was agreed between Roeslein & Robyn, the agents of the insurance company, and M. S. Robison, the vice-president of the base ball company, that before the policy should take effect said Roeslein & Robyn would communicate with the insurance company to ascertain whether it would carry the risk, and if it declined to do so the base ball company should surrender the policy; that when the insurance company, was informed about the matter it notified its said agents that it could not carry the risk, and on April 17th, in the forenoon, before the policy took effect, said agents informed the insured of the decision of the company and the policy was afterwards, pursuant to said agreement, surrendered to the company and therefore never took effect. The other defense rests on a condition of the policy providing for cancellation at any time by the company on five days notice to the insured and the surrender of the unearned portion of the premium. The answer states that no premium was ever paid, but that the defendant on April 17th notified the insured that it could not carry the risk, demanded the surrender of the policy, and the insured, in compliance with said request, surrendered it on April 24th.

The replication alleges that on April 24th, the policy was in the possession of the Bank of Commerce of St. Louis, and the agents of the insurance company got it from said bank without any notice to the insured,

said agents promising the bank at the time that it should remain in force until some other policy just as good should take its place; but that neither the same policy nor any other in lieu of it was afterwards delivered to the bank.

When the insurance was taken out, this policy and other policies were deposited in the National Bank of Commerce as security for a note for $48,000 made by the base ball company, payable to Robison, its vice-president, which had been placed by Robison with said bank to secure a note for $15,000 he had executed to the bank. The note of the base ball company was secured by a deed of trust on real estate in which plaintiff Edwards was trustee and, as the insured buildings stood on the real estate, the policy was made payable to said trustee as his interest might appear.

The testimony of Robison as to Roeslein & Robyn's authority to act as agents for the base ball company in connection with its insurance affairs tended to prove that they were not authorized to do more than procure the amount of insurance each year asked for by Robison. It may be said that the record contains scant if any evidence of the alleged special agreement that this policy was to be cancelled without five days notice if the company objected to carrying the risk.

By its terms the policy was to take effect on April 17th, at noon, and we find no testimony that Roeslein & Robyn notified the officers of the base ball company during the forenoon of that day of the company's refusal to carry the risk. As stated, one of the defenses is that the policy was taken from the Bank of Commerce by Roeslein & Robyn on April 24th, pursuant to a previous agreement that said agents might take it if the company refused the risk. This defense seems not to have been made good by proof. Just what transpired at the bank is uncertain, because the evidence is conflicting. Cowen, the bank's cashier, and Muckenfuss, the base ball company's bookkeeper, testified that

Noel Robyn stated he would like to withdraw some of
the policies, but that he would hold them covered in
his office until he could re-write them, and with this
understanding he was allowed to take, among others,
the Sun Insurance Company's policy.  Robyn denied
making that statement, and the insurance company con-
tends that if made it was at most a verbal contract for
insurance and invalid for lack of authority to Roeslein
& Robyn to bind the insurance company by it.  We
can not accept that view.  The contract for insurance
was contained in the written policy, and if Robyn made
the disputed statement, it was not a verbal agreement
to insure, but an agreement that the existing written
insurance should remain in force until other insurance
was written in place of it.  In other words, it was an
agreement that the policy should not be cancelled then
nor until as good a one could be substituted.  The de-
fendant ought not to be permitted to assert that an
agreement by its agent in charge of the matter to cancel
the insurance in the future, and then only in a certain
contingency, amounted to an absolute cancellation on
the spot, and ended the company's liability.  How were
Cowen and Muckenfuss to know Robyn was acting out-
side his authority when, to all appearances, he was act-
ing within it?

The testimony of Robison tended to prove that Roes-
lein & Robyn had no authority to cancel policies of the
base ball company or receive notice of cancellation; and
it is manifest that in this instance notice to said firm was
not notice to the base ball company; because Roeslein
& Robyn were local insurance agents who had written
this insurance and were still looking after it for the
insurance company and they could not be agents for
the base ball company too, in adverse transactions.

The first instruction given at the instance of the
plaintiff adopted the foregoing theories of the case and
told the jury, in effect, that getting the policy from the

Bank of Commerce under a promise that it should remain in force until another was substituted in lieu of it, if they found that was done, left it in force on May 4th when the fire occurred, as no other policy had been substituted in the meantime; also that five days notice of cancellation was required.

Appellant complains of the refusal of an instruction asked by it which propounded the theory that as the policy was in the custody of the Bank of Commerce, notice of cancellation to said bank was sufficient, inasmuch as the deposit of the policy with the bank led the insurance company to believe the bank had authority to surrender it. This contention will not bear examination. Roeslein & Robyn were the insurance company's agents, knew all about the insurance matters of the base ball company and instead of applying to the Bank of Commerce to get the policy, applied to Muckenfuss, the bookkeeper of the base ball company. Robyn went to the bank because the policy happened to be deposited there; not because he was misled into believing the bank was authorized to surrender it. A person holding an insurance policy as collateral security certainly has no right, unless the circumstances are exceptional, to consent to the cancellation of the insurance without notice to the owner and thereby leave the property uninsured and the owner ignorant of that fact. Notice of cancellation must be given to the insured or to some agent whose general or special powers are sufficient to render notice to him equally effective. Rothschild v. Ins. Co., 74 Mo. 41; Edwards v. Ins. Co., supra.

We agree with the appellant that notice of cancellation to Edwards was unnecessary, as he was a mere trustee. Such notices ought to be given to interested persons whose property is at stake so that they may protect themselves by taking out new insurance. But we do not agree that the court erred in refusing to give an instruction that no notice to Edwards was required, because there was no contention that the alleged can-

cellation was void for lack of notice to him. Instructions ought to be directed to the issues the jury are trying, and so far as we can gather, the instruction asked by the defendant on this point would have been irrelevant. At the instance of the appellant, the court instructed the jury that if they believed Muckenfuss was authorized to look after the base ball company's insurance business in the absence of the officers of said company, and that Muckenfuss was notified of the cancellation of the policy five days before the fire and surrendered it to Roeslein & Robyn, the plaintiff was not entitled to recover; also, that if the vice-president of the base ball company was notified by the insurance company's agents that the policy had been cancelled, and acquiesced therein without objection, plaintiff could not recover.

There was no contention that anybody received five days' notice of the cancellation except the Bank of Commerce and Muckenfuss. Notice to the bank was nugatory and it was for the jury to say whether the duties and authority of Muckenfuss were such as made notice to him binding on the base ball company.

Defendant insists that Robison himself was notified on May 3d the policy had been cancelled and acquiesced in the act by not objecting to it. But in what kind of cancellation did he acquiesce? In an immediate and absolute one, or one contingent on the substitution of new insurance, as Cowen and Muckenfuss swore was the agreement? Acquiescence in the latter proceeding was altogether different from consenting to an outright termination of the contract of insurance, and the court submitted the issue of whether Robison was informed on May 3d that the policy had already cancelled and made no objection.

The judgment is affirmed. *Bland, P. J.,* and *Reyburn, J.,* concur.