GEORGIA HOME INSURANCE COMPANY v. BENNETT.

Opinion delivered April 22, 1918.

1.  DEEDS—SOLE OWNERSHIP OF LAND.—A. was under contract to convey certain land to B., C. and D.; before A. delivered its deed C. and D. delivered to B. quitclaim deeds conveying their interest in the land.  *Held*, B. took the sole and entire interest in the land the instant that A. delivered its deed.

2.  FIRE INSURANCE—WAIVER OF CONDITIONS—SOLE OWNERSHIP.—Requirements in a fire insurance policy in regard to sole and unconditional ownership and change of ownership of the insured property, when inserted in the policy by the insurance company, may be waived by it, and will be held to be waived when its agent, who issued the policy, has knowledge at the time that the insured's interest, which must be an insurable one, was not sole and unconditional.

3.  INSURANCE—CANCELLATION OF POLICY—AGENT FOR INSURED.—Held that under the evidence a question was made for the jury whether the agent of the insurance company was not also the agent of the insured for the purpose of receiving notice of a proposed cancellation of the policy.

Appeal from Clark Circuit Court; *Geo. R. Haynie,* Judge; affirmed.

*Slade & Swift* and *McMillan & McMillan,* for appellant.

1.   The policy was void.   Bennett was not the sole and unconditional owner.   116 Ga. 794; 77 Miss. 348; 86 Md. 130; 21 Fla. 399; 10 Cush. 446; 40 Me. 587; 6 Humph. 176; 27 U. S. 25; 28 Tex. Civ. App. 409.   There was also a change of title or interest.   94 Ark. 594; 10 Mich. 279; 1 *Id.* N. P. 118; 49 S. W. 132.   See also 72 Am. Dec. 705; 52 Am. Rep. 438; 85 Am. Dec. 452; 11 Am. Rep. 741.

2.   Hearsay testimony was admitted.   1 Greenl. Ev. (14 ed.) 135.

3.   There is error in the instructions given and refused.   Goodloe was plaintiff's agent.   76 Ark. 180; 127 *Id.* 141.   He had power to cancel the policy waiving notice.   3 Cooley, Briefs on Ins. 2819; 126 Mich. 626; 81 N. W. 568; 53 N. Y. Sup. 323; 24 Mis. Rep. 136; 82 N. Y. Supp. 140; 83 App. Div. 436; 92 S. E. 858.

4.   Goodloe and the local agent should have been made parties.   There should only have been one trial. 114 Ark. 18; 95 *Id.* 597.   Agents may be liable for losses to the principal from disregard of instructions.   137 U. S. 470; 22 L. R. A. (N. S.) 509; 142 Mass. 513; 104 *Id.* 152; 67 Neb. 282; 126 Ia. 274; 77 Conn. 559; 60 Atl. 293.

*R. E. Stephenson* of Hugo, Okla., *W. E. Atkinson* and *Hardage & Wilson,* for appellee.

1.   The company had knowledge of appellant's title, and accepting the premiums was estopped.   Bennett was really the sole owner, but he certainly had an insurable interest.   18 Fed. 250; 5 Wall. 512; 66 Pac. 249; 106 N. Y. 535; 27 N. Y. 163; 43 *Id.* 389; 62 *Id.* 47; Wood on Fire Ins. 503.   This interest was made known to the company.   81 Pac. 1025; 88 *Id.* 245; 82 N. E. 1134; 21 Okla. 873.   See also 72 Neb. 122; 74 N. W. 269, 270; 67 *Id.* 774; 62 *Id.* 857; 98 S. W. 693; 104 *Id.* 533; 66 Pac. 249, etc.; 55 S. W. 933.

2.   There is no error in the instructions.   24 Okla. 425; 38 Kan. 482; 83 Ill. 241; 55 Ga. 633.

3.   No improper evidence was admitted, but, if so, it was harmless.   81 U. S. 406; 88 *Id.* 105; 7 Ark. 542; 15 *Id.* 372; 23 *Id.* 535; 56 *Id.* 37; 13 S. W. 1098.

4. Goodloe was defendant's agent, not plaintiff's. He was not a necessary party, nor was the local agency. 30 Cal. 92.

### STATEMENT OF FACTS.

On January 1, 1910, the Elk Horn Bank & Trust Company contracted to sell to T. J. Bennett and H. G. Bennett a certain house and lot for $5,800, upon which a cash payment was made and the balance of the purchase money was to be paid in 106 payments. It was provided in the contract of sale that when only $3,000 of the purchase money remained unpaid the bank would convey the property by warranty deed with lien reserved and this $3,000 was to be paid in annual payments of a thousand dollars each. Between the date of that contract and January 5, 1915, T. J. Bennett had Leslie Goodloe, manager of the United Fire Insurance Agency, to insure the house in the Aetna Insurance Company for $5,000. To that policy there was attached a mortgage clause in favor of the bank. On January 5, 1915, T. J. Bennett had Goodloe write the policy here sued on covering the house for $1,500 and the personal property therein for $500. Goodloe at the time knew that $3,000 of the purchase money was unpaid when this policy issued. The house and its contents were totally destroyed by fire on September 1, 1916, and judgment was recovered against the insurance company in the suit brought on the last mentioned policy. A reversal of this judgment is sought on the grounds that Bennett was not the sole and unconditional owner of the property contrary to the requirements of the policy that such should be the case, and also that the policy had been canceled prior to the fire.

The bank's contract to convey was made with T. J. Bennett and his son, H. G. Bennett; but an understanding existed between the father and the son that the deed should be taken in the name of the father alone and that the father should be the sole owner of the property. T. J. Bennett was practically blind and his son had removed

to Oklahoma and had there secured permanent and profitable employment, and in 1910 or 1911 wrote his father that while he intended to assist in meeting the payments he expected to do so without thereby intending to acquire any interest in the property. This letter was destroyed in the fire, but both father and son testified to the fact that it was written.

When sufficient payments had been made to entitle Bennett and his son to a deed under their contract, Bennett wrote his son and a daughter named Lois that he had had a deed prepared by the bank to the three Bennetts. This deed recited the execution of notes by Bennett and his son for the unpaid purchase money, and the notes there mentioned were executed by the son, but in the letter to his father in which the notes were returned, there were also enclosed quitclaim deeds from the son and daughter to their father. The daughter had no interest in the transaction except such as resulted from the use of her name as a party grantee in the deed. Upon the receipt of these notes T. J. Bennett delivered them to the bank and on September 17, 1915, received the deed which named him and his son and daughter as grantees, but at the time of the delivery of this deed he had in his possession the quitclaim deeds from his son and daughter.

It is undisputed that the agent of the insurance company knew of this contract of purchase and knew that part of the purchase money had not been paid; but the company denies that its agent knew that any one was concerned in the transaction except T. J. Bennett alone and it says the policy was void because there was a change of ownership after its issuance and because T. J. Bennett was not the sole and unconditional owner, the policy imposing requirements in both these respects. It is also said that prejudicial error was committed at the trial when the court permitted T. J. Bennett to testify that he had received the letter from his son disclaiming any interest in the land and also in testifying that he had received the letter enclosing the quitclaim deeds; the basis of the ob-

jection being that this testimony was hearsay as the witness had not read the deeds and his knowledge in regard to them was based upon his recollection of what his wife had read to him. Bennett stated that he received the deeds through the mail with the accompanying letter and that his wife read them to him, and the deeds were also lost in the fire without having been recorded.

In March, 1916, the company directed Goodloe to cancel this policy and all other policies it had in force under his agency. This was not done, and on July 1 a special agent of the company was sent to Goodloe to have the policy here sued on and all other policies issued by that agency canceled, and at that time the agency of Goodloe and the United Fire Insurance Agency had been revoked and the company had withdrawn from Arkadelphia and vicinity and it had written no new business there after July 1, 1916. The policy sued on was taken up by Goodloe on July 24, 1916, and canceled and returned to the home office of the company as a canceled policy. Goodloe testified that after issuing the policy he placed it in a vault at the bank to which only representatives of the United Fire Insurance Agency had access. Goodloe also testified that Bennett had spoken to him a number of times in regard to keeping his property insured and had stated to witness that he was expecting witness to look after his interests in this respect. It is argued that this testimony constituted Goodloe the agent of Bennett to receive notice of cancellation of the policy and that the knowledge of Goodloe fulfilled the requirement of the policy that notice of an intention to cancel be given five days before the cancellation occurs. The testimony in regard to Goodloe's agency for Bennett is not undisputed, however, as it was shown by Goodloe's own testimony that he had considerable negotiation with Bennett about the issuance of this policy and only issued it at last when he received directions from Bennett to that effect. In that connection Goodloe testified that Bennett stated the cost of the building had been

$8,500, but that he did not want any additional insurance written until some inspector of the company had stated that the property would carry additional insurance and that finally Bennett gave directions for writing the policy when Goodloe assured him that it would be satisfactory with the company to issue the additional policy without inspection. Other facts will be stated in the opinion.

SMITH, J., (after stating the facts). (1-2) The requirements of the policy in regard to sole and unconditional ownership and change of ownership are, of course, valid and binding and are warranties, the breach of which would cancel the policy. But, inasmuch as they were inserted in the policy for the benefit of the company, they could be waived by the company, and will be held to have been waived if the agent who issued the policy had knowledge at the time that the insured's interest, which, of course, must be an insurable one—was not sole and unconditional. *Westchester Fire Ins. Co.* v. *Smith*, 128 Ark. 92. But, if the testimony of Bennett and his son is credited, Bennett was the owner of the equitable title when he caused payments to be made on the purchase price in a sum sufficient to entitle him to a deed pursuant to the agreement with his son that such should be the effect of these payments. The only persons who could know whether such an agreement had been made were the father and the son, and they both so testified. We think no prejudicial error was committed in permitting Bennett to testify as to his recollection in regard to the deeds read to him by his wife. The testimony is that the deeds were lost in the fire and could not be produced, and if they were ever executed at all their execution occurred prior to the fire when no purpose would have been served thereby except to effectuate the agreement that the father should have the sole ownership. The son testified to the execution of these deeds by himself and his sister, and if they were executed they were intended to become effective, and did become effective, as soon as the bank's

deed was executed. Under the instructions given no recovery could have been had unless the jury found that these two quitclaim deeds were executed. The simultaneous passing of the title from the bank to Bennett and his son and daughter and from the son and daughter to Bennett did not change the character of Bennett's title from a sole and unconditional one. The quitclaim deeds were transmitted to Bennett and took effect upon the execution of the bank's deed and the deed from the bank became effective on its delivery, so that the title of the son and daughter passed from them to their father at the instant it vested in them under the deed from the bank.

We think under the circumstances stated that the testimony of T. J. Bennett in regard to the deeds and their loss was not incompetent. But there can be no question as to the competency of the testimony of H. G. Bennett as to the execution of the deeds and their delivery by mailing them to T. J. Bennett, and, as has been stated, the verdict of the jury shows that this testimony was credited by them.

Complaint is made of the refusal of the court to give an instruction numbered 4, which dealt with the breach of the condition of the policy in regard to sole ownership. But the instruction concluded with the following statement, "or if the interest of the insured in the property be not truly stated therein, then you will find for the defendant." This instruction was properly refused because it ignores the effect of the agent's knowledge in regard to the title and is in conflict with other instructions which presented the view that an insurable interest would support a recovery if the nature of that interest was known to the agent at the time he issued the policy.

An instruction numbered 3 was given at the request of the company, but it was modified by the court by inserting the phrase, "including the authority to cancel policies," and exceptions were duly saved to this modification. As modified, the instruction read as follows:

"You are instructed that, under the terms of the policy sued on herein, the defendant insurance company had the right to cancel the policy at any time by giving to the insured, plaintiff, five days' notice of such cancellation; you are further instructed that if the plaintiff had an arrangement or an agreement with the United Fire Insurance Agency or with Mr. Goodloe by which either was to keep the property of plaintiff insured and giving said agency or Mr. Goodloe the power to select the companies by which said property was to be insured, and to attend to all matters pertaining to his insurance, including the authority to cancel policies, then you will find that plaintiff constituted the said insurance agency or Mr. Goodloe his agent and that notice from the defendant, insurance company, to the said agency or Mr. Goodloe of the cancellation of the said policy was notice to the plaintiff, and if you further find that defendant company notified the said insurance agency or Mr. Goodloe to cancel this policy sued on, and, in compliance with that notice, the said insurance agency or Mr. Goodloe did, acting for plaintiff, deliver said policy and cancel same, then you will find for the defendant."

(3) It is apparent that the purpose of this instruction was to present the view that Goodloe could be the agent of both the insured and the insurer and that notice to him would be notice to Bennett of any fact included within the scope of the agency. We have held that the insurance agent may act as the agent of the insured in waiving notice of cancellation where a new policy was substituted for the one canceled, authority for that purpose having been conferred by the insured. *Allemania Fire Ins. Co.* v. *Zweng,* 127 Ark. 141. And there was testimony in this case to warrant the submission of the question to the jury whether Goodloe was not the agent of Bennett for the purpose of receiving the five days' notice of intention to cancel the policy. But the testimony is not so undisputed that the jury must necessarily have found that Goodloe was the agent of Bennett for

all purposes. There was testimony from which the jury might have found that Goodloe had authority to issue the policy only after receiving directions from Bennett so to do, and that, if any agency existed as between Bennett and Goodloe, the agency was special and not so general as to constitute him an agent for the purpose of both giving and receiving notice of the cancellation.

Here a conflict of interests arose as between the insurer and the insured. It became to the interest of the insurer to order the cancellation of the policy, and it ordered that action taken. It was to the interest of the insured that the policy be continued in force. In the case of a conflict of this character Goodloe would be the agent of the principal in whose behalf or for whose advantage he acted unless, indeed, a general agency existed sufficiently broad in its scope to authorize him to act even where the interests of his principals conflicted. It was not improper, therefore, for the court to submit to the jury the question whether Goodloe's agency for Bennett, if one existed, was sufficiently broad to include within its apparent scope the right to accept the notice which he himself gave of the cancellation of the policy. The principle that one can not serve two masters whose interests are antagonistic applies unless the authority so to do is given expressly or by necessary implication: otherwise, where the interests are conflicting, the agent acts only for the principal whose interests he promotes or in whose behalf he acts; and it is not true as a matter of law that Goodloe's authority to keep the property insured, of itself, constituted him Bennett's agent to cancel the insurance and leave the property uninsured without notifying his principal that he had done so, and it was not, therefore, prejudicial or improper to submit to the jury the question of the extent of Goodloe's agency in this respect. *Johnson* v. *North British & Mercantile Ins. Co.,* 66 Ohio. St. 6; *Body and another* v. *Hartford Fire Ins. Co.,* 23 N. W. 132; *Edwards* v. *Sun Ins. Co.,* 73 S. W. 886.

It is finally insisted that error was committed in refusing to make Goodloe and the local agency represented by him parties to the suit on the theory that, if the policy was not properly canceled in view of the instructions given to that effect, such gross negligence would render the agency liable over to the company. Such may be the case, but we can not decide that question here, as the necessary parties are not before us. But, if this be true, it does not follow that the judgment against the company must be reversed because that company may call its agent to account for infidelity or negligence. No suit was pending at the time by the company against its agents, but, had there been, no prejudicial error would have been committed by refusing to consolidate that case with this one, as the right to recover in each of the cases depends upon wholly different principles of law.

Finding no prejudicial error, the judgment is affirmed.