UNITED STATES FIRE INSURANCE COMPANY, a Corporation, Plaintiff,

v.

INSURANCE COMPANY OF NORTH AMERICA, a Corporation, Defendant.

No. 70 C 265(A).

United States District Court, E. D. Missouri, E. D.

May 13, 1971.

Leo M. Newman, Goldenhersh & Newman, St. Louis, Mo., for plaintiff.

J. H. Cunningham, Jr., St. Louis, Mo., for defendant.

## MEMORANDUM OPINION

HARPER, District Judge.

The plaintiff, United States Fire Insurance Company, is a corporation organized under the laws of New York State. The defendant, Insurance Company of North America, is a corporation organized under the laws of Pennsylvania and doing business within Missouri.

The plaintiff commenced this action against the defendant in the Circuit Court of the City of St. Louis to recover in excess of $10,000.00. The case was removed to this court pursuant to 28 USCA 1441 and this court has jurisdiction under 28 USCA 1332. The matter was heard by this court.

The material facts with respect to the insurance policies involved are not in dispute and are as follows: The plaintiff issued a floater insurance policy to the Mode Craft Company, Inc., a New York corporation, which insures " * * * ladies wearing apparel, manufactured or unmanufactured, or in the process of manufacture, including materials, supplies * * * and all other personal property (not otherwise specifically excluded by this policy) of Mode Craft located at Southern Universal Textile, Rossville, Georgia."

The defendant issued a floater insurance policy to Southern Universal Textile Processors, Inc., whose plant is located in Rossville, Georgia. The defendant's policy covers " * * * goods and merchandise, the property of others, accepted by the insured for examining, shrinking and similar processing while on the premises scheduled below to an amount not exceeding the limits of liability set opposite each location."

Both policies of the plaintiff and defendant provided location limits of liability for Southern Universal Textile Processors. The plaintiff's liability limit is $300,000.00 and the defendant's is limited by endorsement to thirty percent of $1,000,000.00. Both policies have provisions that are commonly referred to as "excess" insurance provisions, seeking to limit their respective liability. The plaintiff's policy contains two such provisions as follows:

"8. No Benefit to Bailee. This insurance shall in no wise inure directly or indirectly to the benefit of any carrier or other bailee.

"22. Other Insurance. If at the time of loss or damage there is available to a named or unnamed insured or any other interested party any other in-

surance which would apply in the absence of this policy, the insurance under this policy shall apply only as excess insurance over such other insurance."

The defendant's policy contains similar provisions in both its form and endorsement as follows:

"9. Other Insurance. It is expressly agreed that this insurance shall not cover to the extent of any other valid and collectible insurance whether prior or subsequent hereto in date, and by whomever effected, directly or indirectly covering the same property, and this company shall be liable for loss or damages only for the excess value beyond the amount of such other insurance.

"3 D. Loss or damage to goods specifically insured under other insurance except that this policy shall be excess over such other insurance and not primary nor contributing insurance."

The above mentioned policies were in effect when goods of Mode Craft were destroyed by fire at Southern's plant in June, 1967. Pursuant to the plaintiff's policy and demand by Mode Craft, the plaintiff paid Mode Craft $45,192.48. Claim was made upon the defendant by plaintiff to pay thirty percent ($13,557.-75) of the above sum, but the defendant refused to pay the plaintiff's claim. (The defendant's policy here is but one of four policies in the total amount of $1,000,000.00 issued to Southern covering such losses.)

It is well settled that the insurer becomes subrogated to the insured's right of action against third party after the payment of a loss. Subrogation arises by operation of law. Pearlman v. Reliance Ins. Co., 371 U.S. 132, 136–137, 83 S.Ct. 232, 9 L.Ed.2d 190 (1962); City Stores Co. v. Lerner Shops of District of Columbia, Inc., 133 U.S.App.D.C. 311, 410 F.2d 1010, 1011 (1969).

In this case there is present a bailment. Mode Craft is the bailor and Southern is the bailee. The defendant's policy covers the bailor's property and the bailor had a right to sue thereunder for its damages. The plaintiff by its payment to Mode Craft is subrogated to the interest of Mode Craft. Both the plaintiff's and defendant's policies specifically insured the goods of Mode Craft and were in effect on the date of the loss. The plaintiff contends that the defendant's policy provides primary coverage, that its policy was excess insurance only, and that the plaintiff is thereby entitled to payment from the defendant of $13,557.75, which is its share of the $45,192.48 loss (defendant's policy limits its liability to a thirty percent contribution). In the alternative, the plaintiff maintains that the goods of Mode Craft were insured by both the plaintiff and defendant and that the plaintiff is entitled to recover $10,529.-85, which is defendant's prorata contribution. (Liability based upon the amount of defendant's responsibility to the total amount of coverage. Plaintiff's policy limits liability to $300,000.-00. Defendant's policy limits liability to thirty percent of $1,000,000.00.) In addition, the plaintiff seeks to recover a ten percent penalty for vexatious delay, attorneys' fees for said vexatious delay, interest at the rate of six percent per annum from June, 1967, and its costs, under either recovery. The defendant contends that the plaintiff's policy provides primary coverage, that defendant's policy was excess insurance only, and plaintiff is not entitled to recover.

From a reading of the plaintiff's and defendant's policies, it is obvious that either policy would provide coverage for this loss if the other policy had not existed. Both policies by their very terms provided specific coverage and liability limits for Mode Craft's goods located at Southern's plant in Georgia. Moreover, it is equally apparent that each insurer in this case has attempted to provide liability coverage only to the extent that "other insurance" clauses restrict their liability.

The insurance policies of the plaintiff and defendant are contracts and the nature and the extent of the obligation of

the insurers is governed exclusively by the provisions of the policies. The plaintiff's contract was entered into in New York, the defendant's contract was entered into in Missouri, and the loss occurred in Georgia.

It is unnecessary for this court to resolve which state law applies, as all three jurisdictions are in accord with respect to "other insurance" clauses in insurance policies. Federal Ins. Co. v. Atlantic Nat. Ins. Co., 25 N.Y.2d 71, 302 N.Y.S.2d 769, 250 N.E.2d 193 (1969); Hartford Steam Boiler Inspection & Ins. Co. v. Cochran Oil Mill & Ginnery Co., 26 Ga.App. 288, 105 S.E. 856 (1920); and Arditi v. Massachusetts Bonding & Ins. Co., 315 S.W.2d 736 (Mo.1958).

Turning briefly to these cases, in Federal Ins. Co., supra, a New York case, the court had this to say, 302 N.Y.S.2d l.c. 771, 250 N.E.2d 194, l.c. 194–195:

"In the present case, both policies cover the same occurrence and both contain 'excess' clauses. If we were to take the language literally and give effect to each of these 'other insurance' clauses, we would be required to conclude that neither policy provided primary coverage. But that would be a logical impossibility since, quite obviously, there can be no *excess* insurance absent a policy providing *primary* coverage and, in the absence of such policy, each would be primary. To give effect to the excess clause in either of the policies would defeat the similar provision in the other and it follows, therefore, that the 'excess' clauses operate to cancel out each other, both coverages must be treated as primary and each company is obligated to share in the cost * * *. This, we note, is the view most of the courts which considered the question have adopted."

Further, 302 N.Y.S.2d at l.c. 774, 250 N.E.2d 196 at l.c. 196:

"As both policies assumed the same risk, both were obligated to defend * * * and both must contribute, prorata, toward payment * * *."

The Supreme Court of Missouri in *Arditi*, supra, a case which has been repeatedly cited and followed in Missouri, 315 S.W.2d l.c. 743, had this to say with regard to insurance clauses:

"The parties agree that this question has never been decided in Missouri and our conclusion is that we should follow the rule stated in Oregon Auto Ins. Co. v. United States Fidelity & Guaranty Co., 9 Cir., 195 F.2d 958, 960, as follows: 'In our opinion the "other insurance provisions of the two policies are indistinguishable in meaning and intent. One cannot rationally choose between them. We understand the parties to concede that where neither policy has an "other insurance" provision, the rule is to hold the two insurers liable to prorate in proportion to the amount of insurance provided by the respective policies. Here, where both policies carry like "other insurance" provisions, we think (they) must be held mutually repugnant and hence be disregarded.' * * * We think that is the situation here and we hold that the trial court correctly apportioned the liability of the two insurance companies as between them."

In *Hartford*, supra, a Georgia case which has been repeatedly referred to and followed, 105 S.E. the court at pages 857–858 stated:

"The proper construction of policies of insurance, as regards proportionate contribution between two or more insurers, has given rise to many and diverse rules, and has sometimes been considered one of the most difficult and troublesome questions in the law of insurance. * * * This constitutes what is denominated 'double insurance,' * * * and according to the rules established by all of the courts, each policy must in such a case contribute proportionately to the loss, even in the absence of any specific provision so requiring. Fireman's Fund Ins. Co. v. Pekor, 106 Ga. 1, 31 S.E. 779(2). Where, however, the insurance is not strictly and technically

'double' insurance—that is, where the policies are not limited to the same subject-matter, and the risk assumed is not identical or coextensive, but one policy is a 'general', 'compound', or 'blanket' policy, and the other is 'specific', and the rules of priority are not specifically provided for by the policies themselves—there arises a great diversity and lack of harmony in the various rules laid down by the appellate courts of different jurisdictions * * *.

"While the one fundamental principle that underlies each of the different rules which have been thus established will be herein later referred to, it does not seem necessary for us to go into a further discussion of these questions, since, as already stated, each of the policies before us, by its express terms, designates the risk assumed by it, for a loss such as has actually occurred, as excess insurance only, for which it is only secondarily liable. One or the other of these specified limitations can be given effect without detriment to the rights or interest of the assured. The question, therefore is: Which of the policies, insofar as the particular risk involved is concerned, is really primary or basic insurance, and which is in fact excess insurance only. As counsel for defendant in error aptly remarks: 'Before either policy can ride as *excess* insurance, the other must be made to walk as *primary* insurance.'

"It is not contended by counsel for either of the insurance companies that the inconsistent and antagonistic provisions could work a forfeiture, so as to defeat the rights of the insured against one or the other insurer * * *.' [T]he decisive test to be applied in determining * * * which is really primary or basic insurance and which is excess insurance only lies in the answer to the question as to which insurance is general and which is specific in its nature."

In construing the contracts of both the plaintiff and the defendant, two points are unmistakably present: First, that if either policy in question had not been in existence at the time of the fire, the other would have provided full coverage for the loss, and second, that the "other insurance" clause of both the plaintiff and defendant have one purpose, that is, to relieve the respective insurers from all liability which it would have if there were other collectible insurance. There is no reason to give absolute effect to such a provision in a policy while ignoring a similar provision in the other policy. The "other insurance" clauses of both policies should occupy the same legal status. In both policies the provisions heretofore referred to provide that their policy shall be "excess insurance" and in other similar language each tries to make its policy secondary and any other policy primary. Of course, unless there is primary insurance there can be no excess insurance. The "other insurance" provisions in the two policies, namely, paragraphs 8 and 22 in the plaintiff's policy, and paragraphs 9 and 3(D) in the defendant's policy are mutually repugnant and hence disregarded.

The defendant further places great reliance upon paragraph 15 of the Transit Form rider of the plaintiff's policy, which is as follows:

"Paragraph 15. Other insurance permitted without notice; and it is understood and agreed that it is the intention of this insurance to indemnify the assured, subject to the terms and conditions of this policy, for all losses covered hereunder, irrespective of any insurance on the same property. In the event of the existence of other insurance, the assured agrees to remit to this company all sums recovered by the assured from such other insurance to the extent of the loss paid by the company."

This paragraph does not make the plaintiff's policy primary coverage. It pertains only to goods in transit; the goods in question were not in transit; and further, it primarily provides for prompt payment by the plaintiff for loss of goods in transit and subrogation.

Further, this paragraph falls into the same category of the other paragraphs in the policies as being mutually repugnant. In the court's opinion it does not have the effect of making the plaintiff's policy the primary coverage and the defendant's policy excess coverage.

In light of the above decisions the court concludes that both parties must share the loss in question.

■ In most cases the apportionment is based upon the size of the policies. While the sizes of the policies here are different, in that the plaintiff's policy provided coverage up to $300,000.00 and the defendant's policy was part of a one million dollar coverage, in the court's opinion we must look at the policies to see what they really covered in order to apportion the loss.

The plaintiff's policy covered only Mode Craft's goods. The defendant's policy covered goods accepted by the insured, Southern, for certain purposes, which included much more than the goods of Mode Craft. Defendant's Exhibit C shows that the defendant's group paid $398,502.75 under its policy for the benefit of others, not including Mode Craft, for like losses in the fire in question. Without regard to the amount of the policies in question, it is undisputed that the plaintiff's policy and the group policies of which the defendant was a part, each completely covered Mode Craft. The plaintiff's policy covered nothing else; the defendant's policy covered much more.

In view of the difference in the coverage of the policies, since each policy completely covered the goods involved, the court is of the opinion that the plaintiff should pay one-half of the loss and the defendant thirty percent of one-half of the loss.

■ Turning now to the loss in question, the plaintiff's testimony discloses that it paid to Mode Craft for the loss, $45,192.48. To support the payment of that amount, the plaintiff offers testimony with respect to the loss. There is no dispute that this amount was paid and it was paid after one Benjamin Lubitz, a certified public accountant, was retained by the General Adjustment Bureau to examine the books of Mode Craft. Plaintiff's Exhibit 5 (Lubitz' deposition) is a part of the record. His testimony discloses (Tr. 21) that the actual cash value of the yardage destroyed in the fire was $37,048.32. To this amount he added a ten percent increase for replacement cost, an average cost per yard for freight of five cents per yard or $739.89, and a processing charge of $3,699.44, based on an estimate that one-half of the goods had been processed at the time of the fire at a cost of fifty cents per yard.

In addition to this testimony, the plaintiff produced Robert Rosenfeld, the president of Southern, who testified that the yardage considered by Lubitz was furnished to Mode Craft by his company. He further testified that the yardage all came to the Southern plant from Cleveland, Tennessee, and that the freight on all the yardage received by the Southern plant from Cleveland, Tennessee, was paid by Southern and not Mode Craft. He further testified that Mode Craft had not paid any processing charges on the yardage destroyed in the fire and that they had not been requested to pay such.

The testimony of Lubitz leaves considerable to be desired with respect to freight, processing costs and the ten percent added as an additional figure. There is nothing in the record to support such figures other than Lubitz' testimony, which is based upon some other records or information that he received while working for General Adjustment Bureau, and which are not before the court.

The court accordingly finds that the amount of the loss payable insofar as the testimony presented to the court is concerned is $37,048.32, and the court finds that with respect to this figure the plaintiff is entitled to a judgment against defendant for thirty percent of one-half of it, or $5,557.25.

The court further holds that plaintiff is not entitled to recover ten percent for vexatious delay and attorneys' fees for said vexatious delay, because it considers that defendant's refusal to pay was not without reasonable or probable cause or excuse. Dixon v. Business Men's Assurance Co., 365 Mo. 580, 285 S.W.2d 619, and Pfingsten v. Franklin Life Ins. Co., 330 S.W.2d 806.

In *Pfingsten*, the court states, l.c. 817:

"The test is whether the evidence and circumstances were such as to show the insurer's refusal was willful and without reasonable cause as the facts would have appeared to a reasonable man before trial."

In view of the amount of plaintiff's demand, the evidence with respect to the loss, as well as the "other insurance" provisions in the policies, the defendant cannot be said to have acted willfully without reasonable cause in contesting liability. This is realistically pointed out by the amount of the judgment as compared to the demand.

This memorandum opinion is adopted by the court as its findings of fact and conclusions of law, and the clerk of the court is directed to enter a judgment for the plaintiff in the sum of Fifty-Five Hundred Fifty-Seven Dollars and Twenty-Five Cents ($5,557.25).