**BITUMINOUS CASUALTY CORPORA- TION, a corporation, Plaintiff,**

v.

**AETNA INSURANCE COMPANY,**
a corporation
and
**Helen L. Kletzker, Defendants.**

**No. 70 C 554(3).**

United States District Court,
E. D. Missouri, E. D.

July 30, 1971.

Gray & Friedman, St. Louis, Mo., for plaintiff.

Michael J. Ebeling, St. Louis, Mo., for defendant Kletzker.

J. H. Cunningham, Jr., St. Louis, Mo., for defendant Aetna Ins. Co.

## FINDINGS OF FACT AND

## CONCLUSIONS OF LAW

WEBSTER, District Judge.

This is an action for a declaratory judgment brought by plaintiff, Bituminous Casualty Corporation, against defendants Aetna Insurance Company and Helen L. Kletzker in order to determine (1) whether Bituminous fire insurance policy #F773 468, covering the apartment dwelling located at 2281–83 Yale Avenue, Maplewood, Missouri had been effectively voided or cancelled prior to August 28, 1970, when a fire damaged the premises, and (2) whether Aetna fire insurance policy #72 48 25, covering the same apartment dwelling, had become effective in spite of the fact that it was not delivered to the insured until after the premises had been damaged by fire.

In her counterclaim and crossclaim, defendant Kletzker avers that at the time of said fire, both policies were in full force and effect; that demand was promptly made on both companies, but that neither has yet accounted to her for the liability incurred as a result of the fire of August 28, 1970 which damaged the insured premises. Defendant Kletzker prays for a judgment against both companies in the amount of $27,000, representing the damage to the insured premises, plus, $2,700 being 10% of the actual damage, representing damage to the defendant occasioned by vexatious delay, plus attorneys' fees and interest, as provided for by § 375.420 R.S.Mo.

Jurisdiction of this court arises under 28 U.S.C. §§ 1332, 2201 and 2202.

This matter was tried to the court. Upon the evidence therein heard and received, and having considered upon the briefs of the parties and being advised in the premises, the court hereby enters

the following findings of fact and conclusions of law:

### Findings of Fact

In 1937, defendant Helen L. Kletzker and her husband purchased an apartment dwelling located at 2281–83 Yale Avenue, Maplewood, Missouri from the Wenzlick-Stevener Real Estate firm. Wenzlick-Stevener performed total management services for the owner on a fee basis. Total management included rent billing and accounting, maintenance and procurement of insurance. For a period of time prior to August 18, 1970, Wenzlick-Stevener was a direct agent for Northwestern National Insurance Company of Milwaukee. The fire insurance policy on the Yale Avenue apartment was carried by Northwestern up until the fall of 1970 when Wenzlick-Stevener decided for business reasons to terminate its relationship with Northwestern. This meant that the Kletzker policy, which was to expire on August 18, 1970, would not be renewed.

Accordingly, sometime in July, Ralph Stevener of Wenzlick-Stevener contacted Mercantile Insurance Agency, with the purpose of procuring a comparable fire insurance policy on the Kletzker apartment dwelling. Mercantile is an underwriter having a direct agency relationship with several insurance companies including Bituminous Casualty Corporation and Aetna Insurance Company.

Stevener specified in his order that he wanted a "fire and extended policy, 80% co-insurance coverage for 3 years in the amount of $42,000." He did not request a particular company. Shortly after July 30, 1970, Stevener received a policy written by the Bituminous Casualty Corporation for Helen L. Kletzker, with an inception date of 8/18/70 to expire 8/18/73, in the amount of forty-two thousand dollars at 80% co-insurance covering a twelve family apartment building located at 2281–83 Yale Avenue in Maplewood. The policy contained the following provision:

"This policy may be cancelled at any time by this company by giving the insured a five (5) days' written notice of cancellation with or without tender of the excess of said paid premium above the pro-rata premium for the expired time, which excess, if not tendered, shall be refunded on demand. Notice of cancellation shall state that said excess premium (if not tendered) will be refunded on demand."

The policy was countersigned by Mercantile and dated July 30, 1970. It bore the number F773 468.

On or about August 1, 1970, Al Freeman of Mercantile mailed the policy to Stevener, who forwarded it to defendant Kletzker. He then notified Bituminous of the fact that the policy had been issued. Sometime prior to August 13, Bituminous conducted an inspection of the premises, and decided not to assume the risk. On August 13, a representative of Bituminous telephoned Mercantile that Bituminous wanted the policy cancelled.

Upon receipt of this information, Freeman then forwarded a note to the Missouri Audit Bureau, a membership organization which is composed of certain fire insurance companies to control the rating and premium charge by such member companies. The note, bearing the date August 14, 1970, stated, "please reserve 8–18–70 for cancellation." Thereupon, Freeman wrote up another policy to cover the Kletzker dwelling, but this time on the Aetna Insurance Company. The Aetna policy was identical to the Bituminous policy in terms and conditions. The Aetna policy was countersigned on August 25, 1970. On or about that date, Freeman notified Aetna of the fact that he had issued a policy on the Kletzker premises bearing the number 72 4825. It was not forwarded to Wenzlick-Stevener until August 31, 1970.

On August 28, fire damaged the premises at 2281–83 Yale Avenue. Defendant Kletzker prepared a sworn statement in proof of loss, attesting to damage in the amount of $27,604.89. The Aetna insurance adjuster concurred in that estimate although he did not concede Aetna's liability. Bituminous never

sent out an adjuster, claiming that they had no coverage on the damaged premises.

When the Aetna policy was forwarded to Wenzlick-Stevener by Mercantile on August 31, it was accompanied by a note which requested the return of the Bituminous policy "for cancellation". (See Plaintiff's Exhibit 5) Wenzlick-Stevener did not comply. The Aetna policy was sent to defendant Kletzker, who kept both policies in her possession in order not to become "caught in the crossfire" between the two insurance companies.

On October 22, Mercantile sent a credit memo (Plaintiff's Exhibit 14) to Wenzlick-Stevener in the amount of $864.00, representing the total return premium on the Bituminous policy issued to defendant Kletzker. The memo passed through Wenzlick-Stevener's bookkeeper, although no agreement was reached as to cancellation of the policy or compromise of the claim, and in spite of the fact that Mr. Stevener had placed a notation to his bookkeeper on the October statement received from Mercantile (Defendant Kletzker's Exhibit A), which notation said "Jean, do not take this credit until further notice." The notation was signed by Mr. Stevener with his initials, and was placed next to a $864.00 credit to the Wenzlick-Stevener account.

Defendant Kletzker, being unable to obtain payment from either insurance company on her sworn statement in proof of loss, had the damaged apartment dwelling repaired at her own expense.

### Conclusions of Law

*Jurisdiction.* The court has jurisdiction over the parties and the subject matter. A justiciable controversy is presented which may be resolved by declaratory judgment.

### The Bituminous Policy

■ The court finds and concludes that a binding contract of insurance had been entered into between the plaintiff Bituminous and defendant Kletzker on July 30, the date of countersignature, despite the fact that coverage was not to commence until August 18th. Therefore, cancellation by the insurer after July 30 could be effected only according to the terms of the insurance contract, or by mutual consent. 6 Appleman, Insurance Law and Practice § 4181; Rothschild v. American Cent. Ins. Co., 5 Mo.App. 596, affirmed 74 Mo. 41 (1878). The commencement of the risk need not be coincident with the date of the insurance agreement. 44 C.J.S. Insurance § 331 (a) and (b). Agreement between the parties as to the essential terms is all that is necessary to bind them to the contract. 44 C.J.S. Insurance § 229(a) (1). "The agreement may exist and be complete * * * when the negotiations have reached such a point that nothing remains to be done by either party but to execute what has been agreed upon." Dayton v. Travelers' Ins. Co., 303 Mo. 1, 259 S.W. 448 (Mo.1924). An insurance policy is a contract, and is subject to contract law. Vance on Insurance § 136; 44 C.J.S. Insurance § 223. This is true in Missouri. Eicks v. Fidelity & Cas. Co. of New York, 300 Mo. 279, 253 S.W. 1029 (Mo.1923); Kern v. Liberty Mut. Ins. Co., 274 F.Supp. 360 (E.D.Mo.1968), affirmed 8 Cir., 398 F.2d 958. The mutual promises supply the consideration here, making the policy a binding agreement, and the fact that the risk assumed by the insurer is agreed to commence on a date subsequent to the date the policy was delivered does not affect the requirement that the policy to be cancelled must be cancelled according to its terms.

The court further finds and concludes that the Bituminous policy was not cancelled, there having been no mutual consent to cancel nor a five day notice of cancellation given to the insured, as required by the cancellation clause in the insurance contract. The facts reveal that Bituminous communicated its intention not to assume the risk only to Al Freeman of Mercantile Insurance Agency. Notice was never brought home to defendant Kletzker, the insured.

■ Nor can it be argued that Mercantile could validly accept notice for the insured. The general rule is that the

"broker or agent who procures the insurance is usually held to be unauthorized to receive notice of cancellation" Vance on Insurance § 160 at 893. See Grace v. American Cent. Ins. Co., 109 U.S. 278, 3 S.Ct. 207, 27 L.Ed. 932 (1883).

Missouri cases set down the following rules:

> "Whether in a particular case or particular matter one acts as agent for the company or insured depends upon the intention of the parties, which is to be determined from the facts and circumstances of the case." Meyers v. State Farm Life Ins. Co., 416 S.W. 2d 10 (Mo.App.1967)

> " * * * the implied authority arising from a course of conduct which permits notice to some other person than the insured, contrary to the explicit provision that notice shall be given 'to the named insured,' is a relinquishment of a stringent provision in the policy which is to the insured's benefit. The right to rely upon this provision for personal notice is a present and continuing right."

Farrar v. Mayabb, 326 S.W.2d 337 (Mo. App.1959). See also Edwards v. Home Ins. Co., 100 Mo.App. 695, 73 S.W. 881 (1902); Edwards v. Sun Ins. Co., 101 Mo.App. 45, 73 S.W. 886 (1903).

Federal courts applying Missouri law reach the same conclusion: "Whether the broker is the agent of the insurer or of the insured depends upon the facts of the particular case." American Fire and Indemnity Co. v. Lancaster, 286 F. Supp. 1011 (E.D.Mo.1968).

■ In this case, defendant Kletzker had no direct contact with Mercantile. Kletzker dealt only with Wenzlick-Stevener, who in turn dealt with Mercantile. There is no evidence before this court to indicate any course of conduct between Mercantile and the insured, or any other facts and circumstances creating an agency relationship between the two such that Mercantile could validly accept notice of cancellation for the insured. By the terms of the Bituminous contract set out supra, notice of cancellation had to be given to the insured in order to be effective. A provision in an insurance policy for cancellation must be strictly complied with by the party seeking cancellation in order to terminate the policy. Dyche v. Bostian, 229 S.W.2d 25 (Mo.App.), affirmed 361 Mo. 122, 233 S.W.2d 721 (Mo.1950); MFA Mut. Ins. Co. v. Southwest Baptist College, Inc., 381 S.W.2d 797 (Mo.1964).

While Wenzlick-Stevener had undoubtedly become, through a course of conduct with the insured, an agent of the insured having authority to accept notice of cancellation for her, the evidence of this case shows unequivocally that Mercantile did not inform Wenzlick-Stevener of Bituminous' decision to cancel until August 31, 1970, three days after the fire.

Having found that Bituminous had not given effective notice of cancellation to the insured prior to August 28, 1970, it follows and the court finds and concludes, that the Bituminous policy was in effect at the time of the fire.

■ ■ The court further finds and concludes that the Bituminous policy was neither cancelled, nor the claim satisfied when the bookkeeper at Wenzlick-Stevener inadvertently accepted the $864.00 credit from Mercantile. Mutual consent is required in order for a cancellation to be effective, which requires a meeting of the minds. 45 C.J.S. Insurance § 444(b); Appleman, Insurance Law and Practice, § 4181; Dowell v. Commonwealth Ins. Co. of New York, 215 Mo.App. 600, 256 S.W. 1074 (1923); Edwards v. Sun Insurance Company, 101 Mo.App. 45, 73 S.W. 886 (1903). Meeting of the minds is also required for there to be a valid compromise or settlement of a claim:

> "For, though however valid a claim may be, if there is an honest belief by the debtor that it is invalid, it may be compromised, yet a compromise, like any other agreement, must be made understandingly. It must have been, of course, understood to be a compro-

mise." Cassville Roller Mill Co. v. Aetna Ins. Co., 105 Mo.App. 146, 79 S.W. 720 (1904). See also 45 C.J.S. Insurance § 1106.

The facts in this case disclose that the credit of $864.00 representing the return premium on the Bituminous policy, was not knowingly and understandingly received by Wenzlick-Stevener, the managing agent of the insured, who otherwise might have been authorized to agree to cancellation of the Bituminous policy or satisfaction of a claim arising out of it.

*The Aetna Policy*

 Physical delivery of an insurance policy to the insured is not an essential element in binding the insurer to the terms of the policy. See Vance on Insurance, §§ 42, 43; 44 C.J.S. Insurance § 263. This general rule has been held to be applicable in Missouri, absent an agreement between the parties to the contrary. National City Bank of St. Louis v. Missouri State Life Ins. Co., 332 Mo. 182, 57 S.W.2d 1066 (1933); Eyring v. Kansas City Life Ins. Co., 234 Mo.App. 328, 129 S.W.2d 1086 (1939); Meinsen v. Order of United Commercial Travelers of America, 43 F.Supp. 756 (W. D.Mo.1942). Evidence of an extrinsic agreement between defendant Aetna and defendant Kletzker that delivery of the policy to the insured was to be prerequisite to its validity has not been presented to the court. Nor is such an agreement contained in the terms of the Aetna policy. Therefore, the court finds that the Aetna policy, which had been countersigned on August 25, 1970 but not delivered to the insured until September 30, 1970, was nevertheless in effect on August 28, 1970, when a fire damaged the insured premises.

The court finds that both policies, Aetna #72 48 25 and Bituminous #F773 468, covering the apartment dwelling located at 2281–83 Yale Avenue, Maplewood, Missouri, were in full force and effect on August 28, 1970, when fire damaged the insured premises, and that each insurer is therefore liable to the insured

for the amount of the damage to the insured premises by fire on August 28, 1970 in proportions called for by the identical "pro rata liability" clauses found in both policies. Vance on Insurance § 154. See also Judge Harper's opinion in United States Fire Insurance Company v. Insurance Company of North America, 328 F.Supp. 43 (E.D.Mo.1971).

The pro rata liability clause takes the form of that in the so-called "New York standard fire policy":

"This company shall not be liable for a greater proportion of any loss than the amount hereby insured shall bear to the whole insurance covering the property against the peril involved, whether collectible or not."

Applying this clause to the instant case, each insurer was liable up to $42,000, bringing the whole insurance covering defendant Kletzker's property to $84,000. This converts to a 50% contribution figure, applicable to both companies. The uncontested evidence in this case having established defendant Kletzker's loss, after allowance for "improvements and betterments," to be $25,753.76. Defendant Kletzker is entitled to a separately enforceable judgment against plaintiff Bituminous Casualty Corporation in the amount of $12,876.88 and a separately enforceable judgment against defendant Aetna Insurance Company in the amount of $12,876.88.

 The court further finds and concludes that defendants' refusal to pay was not without reasonable or probable cause or excuse, and that defendant Kletzker is not therefore entitled to recover 10% for vexatious delay and attorneys' fees on account of such delay. Dixon v. Business Men's Assurance Co., 365 Mo. 580, 285 S.W.2d 619 (1955); Pfingsten v. Franklin Life Ins. Co., 330 S.W. 2d 806 (Mo.1959); United States Fire Insurance Company v. Insurance Company of North America, 328 F.Supp. 43 (E.D.Mo.1971).

Costs will be assessed equally against plaintiff and defendant Aetna Insurance Company.