**BITUMINOUS CASUALTY CORPORA-
TION, Appellant-Appellee,**

v.

**AETNA INSURANCE COMPANY,
Appellant-Appellee,
Helen L. Kletzker, Appellant-Appellee.**

**Nos. 71–1599, 71–1612, 71–1618.**

United States Court of Appeals,
Eighth Circuit.

Submitted May 10, 1972.

Decided June 8, 1972.

Charles E. Gray, Gray, Friedman & Ritter, St. Louis, Mo., for appellant Bituminous Casualty Corp.

John H. Cunningham, Jr., Willson, Cunningham & McClellan, St. Louis, Mo., for Aetna Ins. Co., appellant-appellee.

Michael J. Ebeling, St. Louis, Mo., for Helen L. Kletzker.

Before MATTHES, Chief Judge, and HEANEY and STEPHENSON, Circuit Judges.

STEPHENSON, Circuit Judge.

This is an appeal from a declaratory judgment entered by the trial court holding that two fire insurance policies were in effect on the date the insured suffered a fire loss and therefore each of the insurance companies involved must pay 50% of the loss sustained by the insured. The insured's right to recover and the amount of her loss are not in dispute.[1] The trial court's Findings of Fact and Conclusions of Law are reported at 332 F.Supp. 860 (E.D.Mo. 1971). The material facts are not in dispute and are fully set out in the reported opinion. They will be repeated only to the extent necessary in presenting the views of this court.

The insured (Helen L. Kletzker) owned an apartment building located in Maplewood, Missouri. Wenzlick Stevener & Company (insured's manager) a Corporation engaged in the real estate business, managed the property for the insured commencing in 1937. In late July 1970 the insured's manager contacted the Mercantile Insurance Agency (the Agency) and requested fire and extended coverage in the amount of $42,000 for three years with an inception date of August 18, 1970. The Agency promptly issued a policy with Bituminous Casualty Co. (Bituminous) in accordance with the terms requested, sending the original policy to insured's manager and a copy to Bituminous. On August 13, 1970, 5 days prior to the policy inception date, the Agency was telephonically advised by Bituminous that it desired to cancel the policy. The Agency promptly wrote a new policy with Aetna Insurance Company (Aetna) containing the same terms, including a policy inception date of August 18, 1970. The policy was not actually countersigned by the Agency until August 25, 1970, after which it was forwarded to the insured's manager on August 31, 1970 with a note requesting the return of the Bituminous policy "for cancellation." A fire occurred on insured's premises August 28, 1970. Thereafter the insured filed proofs of loss with both Bituminous and Aetna. Bituminous then brought this declaratory judgment action seeking a determination as to coverage.

The trial court concluded that "the Bituminous policy was not cancelled, there having been no mutual consent to cancel nor a five-day notice of cancellation given to the insured, as required by the cancellation clause in the insurance contract." In substance, the trial court held that notice to the Agency was not notice to the insured under the terms of the policy and that while insured's manager had become, through a course of conduct with the insured, an agent of the insured having the authority to accept notice of cancellation for her, the evidence showed that the Agency did not notify insured's manager of Bituminous' decision to cancel until three days after the fire and therefore the Bituminous policy was in effect at the time of the fire. The trial court further concluded that the policy with Aetna, which was countersigned by the Agency three days before the fire, was in effect even though the policy was not actually delivered until after the fire; that physical delivery of an insurance policy to the insured is not an essential element in binding the insurer to the terms of the policy.

1. The insured does ask that we clarify the judgment in her favor to the extent that interest be awarded at the rate of 6% commencing 60 days after presentation of proof of loss. The parties concede this is correct. Interest will be accordingly awarded the insured from December 23, 1970.

We agree with the trial court's determination that the Aetna policy was in effect at the time of the fire. It is undisputed that the Agency was the general agent for Aetna, and, as such, it had the authority to issue policies with Aetna.[2] Kratchman v. North British & Mercantile Ins. Co., 240 Mo. App. 297, 203 S.W.2d 483, 489 (1947); Bennett v. National Fire Ins. Co. of Hartford, 235 Mo.App. 720, 143 S.W.2d 479, 482 (1940). Delivery of the insurance policy to the insured is not essential to make it binding on the insurer unless there is an express agreement to that effect. Eyring v. Kansas City Life Ins. Co., 234 Mo.App. 328, 129 S.W.2d 1086, 1089 (1939); National City Bank of St. Louis v. Missouri State Life Ins. Co., 332 Mo. 182, 57 S.W.2d 1066 (1933). There was no showing in this record that delivery of the policy was a requisite to coverage. The undisputed evidence is that the Aetna policy was countersigned on August 25, 1970, three days before the fire, and therefore the coverage was complete. The mere fact that actual delivery of the policy occurred after the fire did not effect the coverage. See Baldwin v. Chouteau Ins. Co., 56 Mo. 151, 154–157 (1874); Cf. Keim et al. v. Home Mutual Fire & Marine Ins. Co. of St. Louis, 42 Mo. 38 (1867). Aetna additionally urges that since the trial court held that there was no effective cancellation of insured's policy with Bituminous, the most that can be said is that the mailing by the Agency of the Aetna policy to insured's manager asking for the return of the Bituminous policy constituted a new offer of insurance that was never accepted by the insured. However, since we disagree with the trial court's conclusion that the Bituminous policy was not effectively cancelled we reject Aetna's contention in this regard.

The record discloses undisputed testimony that the procedure generally followed in the insurance industry is that if a company refuses coverage prior to the inception date of a policy, the agent immediately places the coverage in another company and no notice of cancellation is forwarded to the insured. This was the procedure followed by the Agency in this case. The office procedures involved in formal issue of the policy and ultimately mailing the same to the insured or his representative follows routinely and sometimes takes several days. In this case the Aetna policy was routinely mailed out on August 31, 1970 and return of the Bituminous policy requested "for cancellation," even though the latter policy had never really been in effect since it was cancelled before the inception date and a new policy issued with Aetna. The trial court in holding that Bituminous failed to give effective notice of cancellation to the insured emphasized that: 1) Under Missouri law a provision in an insurance policy for cancellation must be strictly complied with by the party seeking cancellation, Dyche v. Bostian, Mo.App., 229 S.W.2d 25 (1950), affirmed 361 Mo. 122, 233 S.W.2d 721 (1950); MFA Mut. Ins. Co. v. Southwest Baptist College, Inc., 381 S.W.2d 797 (Mo.1964); 2) implied authority authorizing notice to other than the insured "is a relinquishment of a stringent provision in the policy which is to the insured's benefit. The right to rely upon this provision for personal notice is a present and continuing right." Farrar v. Mayabb, 326 S.W.2d 337 (Mo. App.1959). While we agree with this statement as to the law of Missouri, we view the following discussion in *Farrar, supra* at 342, more pertinent to the problem here:

We have examined a number of the cases which hold that the appointment of an insurance broker as 'general agent' to maintain insurance in force carries with it authority to receive notice of cancellation. Time and space

---

2. Albert Freeman, vice-president of the Agency, testified that the Agency had authority to bind or assign insurance contracts to either Bituminous or Aetna. No evidence to the contrary was offered by either party.

will not permit the digesting and classifying of all these cases. Those interested will find a number listed in 45 C.J.S. Insurance § 450d(2), p. 95, note 36; Appleman on Insurance, vol. 8, sec. 5014, notes 51 and 54, and of course at ☞229, Insurance, in the West Digest system. While the holdings in all the cases cannot be reconciled, we are impressed by the fact that they fall generally into two main classifications, (a) where the insured is a corporation or business house and the very necessities of the situation cry out for, and the conduct of the parties proclaims, an agency with complete power to represent the company in all matters pertaining to insurance coverage, (b) (and these are numerous) *where the acceptance of notice of cancellation is but one step in the procurement of (other) satisfactory insurance.* In many of these cases the question was whether a (later) policy was valid, and that depended upon whether the first coverage still existed. The 'implied authority' in this situation is upheld in order that the broker or agent can carry out his authority to secure satisfactory insurance. But it is further held that where the receipt of notice of cancellation is not for the purpose of replacing with other satisfactory insurance so as to 'maintain' the coverage, and the effect of the acceptance of such notice reaches to the end of doing the insured out of his coverage, as was done in this case, then the authority to waive or receive cancellation notice is not implied. (Footnotes omitted.)

 In the matter before us the Agency exercised its "implied authority" for the purpose of fulfilling its obligation to secure a $42,000 fire insurance policy for the insured. Had it failed to do so it could have been held liable. Hall v. Charlton, 447 S.W.2d 5, 9 (Mo. App.1969); KapPel Fabrics, Inc. v. R. B. Jones & Sons, Inc., 402 S.W.2d 49, 53 (Mo.App.1966). The action of the Agency in accepting notice of cancellation from Bituminous and in placing a new policy with Aetna was in accordance with the procedure that the record shows prevailed in the insurance industry. The insured through her manager did not seek two policies for $42,000 each, with the resultant double premiums. She also left the matter of choice of insurance company and the actual placing of the insurance (through her manager) to the Agency. Under these circumstances we are satisfied that the Agency had the implied authority to do whatever was necessary to procure the appropriate insurance, including the right to accept a notice of cancellation and the procuring of a new policy such as was done here. The Bituminous policy having been effectively cancelled, recovery can only be had against Aetna.

Reversed and remanded for entry of judgment in accordance herewith.